JEFFREY S. FISHER, Plaintiff-Appellee, v. ROCK ISLAND COUNTY *et al.*, Defendants-Appellants (Gordon Powell, Sheriff, Defendant).

Third District   No. 3—88—0372

Opinion filed November 28, 1989.

James T. Teros, State's Attorney, and Klockau, McCarthy, Ellison & Marquis, P.C., both of Rock Island (Robert L. Ellison, of counsel), for appellants.

Gerald J. Meehan, of Corny, Walker & Meehan, of Rock Island, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The circuit court of Rock Island County reversed, by order dated April 22, 1988, a decision of the Rock Island County Merit Commission (Merit Commission) rejecting plaintiff-appellee as a deputy sheriff applicant and remanded the cause to the Merit Commission with di-

rections to add plaintiff to the then current eligibility list for a deputy sheriff position. Defendants-appellants appeal the circuit court's order, alleging that the findings and decision of the circuit court were against the manifest weight of the evidence.

Plaintiff was a candidate for appointment as a Rock Island County deputy sheriff. After learning that testing for eligibility for the position was to be held, plaintiff took and passed a physical agility test. He was then furnished with written instructions on the conduct of the written examination which was characterized by its publisher, McCann Associates, Inc. (McCann Associates), as "How to Do Your Best on a McCann Associates, Inc. Deputy Sheriff (Form ESV–125) Written Test." The first page of that document, admitted as exhibit 8, stated: "All questions have equal weight. Your score will be based on the number of questions which you have answered correctly." Identical language appeared in the written test booklet.

On July 11, 1987, plaintiff took the examination with knowledge of the directions and how the test would be scored. McCann Associates scored the examination and recommended a total cut-off score of 77.6%, leaving 21 qualified applicants with plaintiff being among those qualified. Although plaintiff received an overall acceptable score, McCann Associates noted some subtest deficiencies in plaintiff's examination regarding the areas of police aptitude and police public relations. Regarding subtest deficiencies in these two areas, McCann Associates stated the following in its report to the Merit Commission:

> "A score of 18 or less on Subtest V–2, Police Aptitude, suggest[s] that the candidate may have neither the overall aptitude for police work nor the interest and motivation toward police work that a candidate should have in order to acquire the knowledges, skills and abilities needed by a competent police officer. In the oral examination or interview, further probing should be done to provide additional evidence as to the candidate's attitude and real motivation toward the position of police officer.
>
> A score of 12 or less on Subtest V–3, Police Public Relations, suggest[s] that the candidate may have real difficulty in dealing with citizens in the course of his/her law enforcement duties or that the candidate's view of the role of police officer in society is not appropriate. It is possible, in either an oral examination or an interview, to ask questions which can provide you with further evidence to indicate whether or not this deficiency is sufficiently critical to justify not considering the candi-

date further for appointment."

The Merit Commission met on August 5, 1987, for the purpose of reviewing the test scores and the written analysis provided by McCann Associates. By unanimous vote the Merit Commission determined "that the eligibility requirements be cut off at a raw score of 76% with 4 persons in that range being rejected for serious deficiencies in one or more areas." Plaintiff was among those rejected for serious deficiencies in one or more areas and was informed by the Merit Commission that he had failed the test by letter dated August 5, 1987. Plaintiff's subsequent requests to the Merit Commission for reconsideration were denied.

The Merit Commission is responsible for screening applicants pursuant to recognized principles of public employment. (Ill. Rev. Stat. 1987, ch. 125, par. 157.) The Merit Commission must also "formulate, adopt and put into effect, rules, regulations and procedures for its operation and *** shall set standards and qualifications for each class." (Ill. Rev. Stat. 1987, ch. 125, par. 159.) Pursuant to statute, the Merit Commission adopted rules and regulations with regard to candidates for deputy sheriff which state, in pertinent part, that the applicant must:

"B.8. Successfully pass a written and/or oral examination to be administered by the Merit Commission."

Plaintiff asserts that the Merit Commission further expressed its policy regarding examinations in a "Memo For Record" delivered to the sheriff's office in 1982. The memo stated:

"In order to make it clear, to all concerned, the passing grade for both entry and promotion is a total overall score of 70%, i.e. the sum total or the weighted 70% assigned the written examination, the weighted 30% assigned the oral examination, plus the 5% added factor assigned only to the entrance qualification for honorably discharged veterans *** the minimum passing grade is 70% on both the written and oral examinations."

Defendants contend, however, that the 1982 memo has no application to the 1987 test since the memo was not republished or included in revised rules adopted in 1986.

Captain Richard Fisher, plaintiff's father, testified that for the 19 years of his service, the total test result had been the only basis for scoring the written examination. Sheriff Gordon Powell testified that he didn't believe a candidate who passed the test as a whole should be disqualified for a deficiency in one category because the probationary period provides a better opportunity to judge performance. In fact,

defendant has not disputed that the testing procedure, prior to 1987, was based on a total raw score on the written examination.

The trial court found that the Merit Commission's determination that plaintiff had failed the written examination for deputy sheriff was against the manifest weight of the evidence. The court, therefore, remanded the cause to the Merit Commission with directions to: (1) reverse its 1987 rejection of plaintiff and enter on its records a finding that plaintiff passed the written examination; and (2) grant plaintiff an oral interview for the deputy sheriff position, and if he attains a passing grade, place him on the eligibility list for the entry level position.

■ Although neither party has raised the issue, we initially note that this court has jurisdiction based on our finding that the trial court's order of April 22, 1988, is final and appealable because the circuit court's order was specific in nature and left no discretion with the Merit Commission. There was nothing left for the Merit Commission to do except comply with the circuit court's order or appeal. See *Kvidera v. Board of Fire & Police Commissioners* (1988), 168 Ill. App. 3d 380, 522 N.E.2d 757; *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 443 N.E.2d 268; *Robinson v. Cook County Police & Corrections Merit Board* (1981), 93 Ill. App. 3d 1051, 418 N.E.2d 170.

■ Our responsibility on review is to consider the Merit Commission's finding of fact as *prima facie* true and correct (Ill. Rev. Stat. 1987, ch. 110, par. 3—110) and reverse the agency's finding only if it is against the manifest weight of the evidence. (*Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 472 N.E.2d 434; *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351) In other words, a different conclusion must be clearly evident from the record and the court must determine that no rational trier of fact could have agreed with the agency's decision. (*Service Employees International Local Union No. 316 v. Illinois Educational Labor Relations Board* (1987), 153 Ill. App. 3d 744, 505 N.E.2d 418.) We concur with the trial court's reversal of the Merit Commission's finding.

■ Plaintiff presented unrebutted testimony that in previous years candidates passed or failed the written examination based solely on a total raw score, without separate evaluations of subtest scores. Although the Merit Commission's rules and regulations regarding the tests are nonspecific, its custom and practice of interpreting its rules to base the written examination on a total raw score binds the agency as if the rule provided specific guidelines. (*Hetzer v. State Police Merit Board* (1977), 49 Ill. App. 3d 1045, 365 N.E.2d 261.) Moreover, McCann Associates did not recommend that plaintiff be excluded from

candidacy based on his subtest deficiencies, but stated that these areas should be probed during the next stage of oral interviews. In fact, the Merit Commission's own findings indicate that plaintiff received a passing raw score, and the defendant sheriff further indicated that the probationary period would be the proper place to screen plaintiff in these alleged deficiencies. The 1982 "Memo for Record" also evidences the method of scoring the Merit Commission used in the past, which corroborates the testimony of Captain Fisher.

The Merit Commission has the right to change its method of determining how to evaluate its written examination if, prior to the examination, it publicizes that the test will be scored in a manner different than that used in previous years. The booklets, however, indicated the tests would be scored based on the total number of questions answered correctly; a method consistent with its custom and practice. Individuals taking the examination had a right, for whatever it's worth, to rely on this statement in taking the test.

We, therefore, affirm the decision of the trial court.

Affirmed.

WOMBACHER, P.J., and STOUDER, J., concur.