LEROY MARTIN, Superintendent of Police of the City of Chicago, Plaintiff-Appellee, v. JESSE CAJDA et al., Defendants-Appellants.

First District (2nd Division)   No. 1—91—2397

Opinion filed November 24, 1992.

Law Offices of Joseph V. Roddy, of Chicago (Joseph V. Roddy, of counsel), for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

On February 1, 1990, the Chicago police department initiated a disciplinary proceeding against defendant Officer Jessie Cajda (Cajda), an 18-year veteran of the department, charging him with, *inter alia*, violating section 25—30 of the Municipal Code of Chicago. (Chicago Municipal Code §25—30 (1980), recodified Chicago Municipal Code §2—152—340 (1990).) That provision, commonly known as the residency ordinance, obligates all employees and officers of the City of Chicago (the City) to reside "actually" within its corporate bounda-

ries. Chicago Municipal Code §25—30 (1980), recodified Chicago Municipal Code §2—152—340 (1990).

On May 30, 1990, the Chicago Police Board (Board) held a hearing on the charges against Cajda, at which he testified as an adverse witness, called by the department. He stated that he had resided at 4149 North Mango, Chicago, Illinois, during his entire tenure as a police officer, but admitted that his wife of 10 years, Nancy Cajda (nee Villi) owned the home in which she resided at 3025 South Oak Park Avenue in Berwyn, Illinois, and at which she had lived throughout the couple's marriage.

Officer Eugene Labiak, an investigator with the police department's Inspector General's office, who had conducted an investigation of Cajda, testified that he observed Cajda on seven different occasions either arrive at the Berwyn address after completing his shift as a patrolman, or leave that house in uniform and proceed to work. He also stated that he canvassed the area around the Berwyn residence, speaking to neighbors, asking if they recognized Cajda.

Two neighbors, Ms. Joyce Czerwien and Ms. Cathy Tomascewski, also testified. Ms. Czerwien lived adjacent to the Cajda residence in Berwyn, and Ms. Tomascewski lived two homes north of it. Both witnesses testified that they had seen Cajda perform duties, such as mowing the lawn and shoveling snow, at the Berwyn residence, acts consistent with actual residence there. Ms. Czerwien testified that approximately 1½ years before the date of the hearing, she observed Cajda "move out" of the Berwyn residence.

Cajda testified in his own defense as well. He stated that he owned his home in Chicago, paid the bills there and used that home as his mailing address on his Illinois and Federal income tax forms. He introduced an affidavit of title on the Berwyn home which showed that it was owned by his wife in her maiden name and that Cajda had no ownership interest in it.

He explained to the hearing officer that he and his wife maintained separate residences because his wife wanted the children to grow up and attend school in the suburbs. He admitted that he did not reside alone in the Chicago home, but that his mother and brother resided there as well.

Cajda presented 21 witnesses and a considerable amount of documentary evidence. The witnesses all testified essentially that they would either call or pick up Cajda at the Chicago address, and that he was at that address at various hours of the day and evening. The documentary evidence, which included utility bills and social club memberships, indicated that Cajda resided at the Chicago address.

At the close of evidence, the hearing officer found that Cajda violated the Chicago mandatory residency ordinance (Chicago Municipal Code §25—30 (1980), recodified Chicago Municipal Code §2—152—340 (1990)), in that he actually resided at the Berwyn residence from 1980 until the hearing date in 1990, and that this resulted in a violation of six of the police department's disciplinary rules. The hearing officer recommended that the Board suspend Cajda for 60 days as punishment for his violations. The Board accepted the hearing officer's recommendation and entered a decision suspending Cajda from February 3, 1990, until and including April 3, 1990.

Superintendent of Police Martin filed a complaint for administrative review in the circuit court of Cook County, pursuant to section 3—101 *et seq.* of the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, pars. 3—101 through 3—112), alleging that the Board erred in failing to discharge Cajda after finding that he did not "actually" reside in the City of Chicago at some point while in the service of the City. The superintendent sought a reversal of the Board's sanction and asked the court to remand the action to the Board, ordering it to discharge Cajda.

In his answer, Cajda denied the applicability of section 25—30 to his case and also denied that the section required discharge as an automatic sanction for a violation thereof. He raised no affirmative matters other than to request that the City tender his back pay to the circuit court and that it be placed in a fund until the resolution of the litigation. Cajda did not allege that the Board's finding was against the manifest weight of the evidence nor did he intimate in any other way that he sought review of the Board's factual findings.

After accepting memoranda from the parties and entertaining oral argument, the trial court ruled that the Board erred. It determined that the Chicago residency requirement ordinance does in fact mandate discharge for any violation thereof. Accordingly, on March 15, 1991, the court entered an order reversing the sanction imposed by the Board and remanding the cause to that agency for the entry of an order of discharge against Cajda in accordance with section 25—30 of the Municipal Code of Chicago, Illinois (Chicago Municipal Code §25—30 (1980), recodified Chicago Municipal Code §2—152—340 (1990)). On June 14, 1991, the Board complied with the court's order by discharging Cajda from the Chicago police department.

Subsequently, however, Cajda filed a motion to set a briefing schedule and to reverse the Board's order of discharge. The motion was not in the form of a complaint for administrative review as required by section 3—101 of the Administrative Review Law (Ill. Rev.

Stat. 1991, ch. 110, par. 3—101). At the hearing on his motion, Cajda suggested that the trial court had two options: It could either reverse its earlier decision as to the requirements of the Chicago residency ordinance or affirm the order of the Board discharging Cajda and allow him to appeal the decision. In response, Superintendent Martin argued that Cajda's motion, in substance, sought to have the court reconsider its earlier decision on the proper construction of Chicago's residency ordinance; and he further pointed out that under section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203), a motion to reconsider a judgment must be filed within 30 days of its entry, unless extended by the court within such 30-day period. The court rendered its initial judgment on March 15, 1991, yet the hearing on Cajda's motion was held on July 9, 1991, well after the 30 days had expired.

The trial court rejected Martin's argument and held that the Board had complied with the court's previous ruling. In this later order, the trial judge included an approximation of Supreme Court Rule 304(a) language, stating that "[t]he judgment if [sic] discharge is now final and the court finds no reason to delay enforcement of any appeal of this judgment." On July 19, 1991, Cajda filed his notice of appeal.

As noted above, the circuit court issued two separate orders in this action. The first, issued on March 15, 1991, held that the Board misinterpreted section 25—30 of the Chicago Municipal Code and therefore erred by imposing a sanction of less than discharge for Cajda's violation of the City's residency ordinance. In its second order, issued on July 9, 1991, the trial court found that the Board had complied with the court's prior order remanding the action for entry of an order of discharge. The court also found that the judgment was final and therefore appealable.

Cajda predicates this court's jurisdiction of his appeal on Supreme Court Rule 301 (134 Ill. 2d R. 301), contending that this is an appeal by right from a final judgment of the circuit court of Cook County. Although he never states it as such, Cajda necessarily takes the position that he appeals from the trial court's July 9, 1991, order, and not its March 15, 1991, order. Martin responds that the order of March 15 was final and appealable, that Cajda's July 19, 1991, notice of appeal was untimely, and thus, this court is without jurisdiction over this appeal.

■■ In *Wilkey v. Illinois Racing Board* (1983), 96 Ill. 2d 245, 449 N.E.2d 843, our supreme court addressed what constitutes a final and appealable order for the purposes of a circuit court's review of an administrative proceeding, and held that the form of an order does not

dictate its finality and that remandment of the cause to the agency does not preclude the finality, and thus the appealability, of the order. Rather than exalt form over substance, the *Wilkey* court held that the finality of an order which remands an action to the agency turns on what the court instructed the agency to do.

> " 'If, upon remandment, the trial court has only to enter a judgment or decree in accordance with the directions of the reviewing court, or to conduct further proceedings on uncontroverted incidental matters, then, irrespective of the remandment clause in the judgment order, the judgment of the appellate court is final and reviewable.' " (*Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 845, quoting *Cory Corp. v. Fitzgerald* (1949), 403 Ill. 409, 414, 86 N.E.2d 363, 366.[1])

The court contrasted that situation to one in which the reviewing court orders the trial court, or in this case an administrative agency, to hold a new trial or another proceeding which involves a disputed question of fact or law. *Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 845.

With *Wilkey's* standard as our touchstone, we find that the trial court order of March 15, 1991, was final and appealable. That order required the Board to enter an order of discharge as a penalty for Cajda's breach of the City's residency ordinance. The order left nothing to the discretion of the Board, nor did it necessitate any further proceedings other than the mere ministerial task of entering the prescribed order.

This is the precise situation that confronted the court in *Fisher v. Rock Island County* (1989), 191 Ill. App. 3d 110, 547 N.E.2d 678, where the plaintiff sought review of a merit commission determination that he was unfit to be a candidate for a position as a deputy sheriff of Rock Island County. The circuit court reversed the commission's determination and remanded the action to that agency with directions to add the plaintiff's name to the list of approved applicants. Before complying with the circuit court's order, the commission appealed the remand order.

---

[1]Although *Cory Corp.* (403 Ill. 409, 86 N.E.2d 363), upon which the *Wilkey* court relied, discussed the finality and appealability of an appellate court order, the *Wilkey* court later stated that it adhered to *Cory Corp.*'s definition of finality for the purposes of administrative review as well. *Wilkey*, 96 Ill. 2d at 250, 449 N.E.2d at 845, citing *Ahlers v. Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 266, 383 N.E.2d 207; *J.M. Jones Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 368, 370, 375 N.E.2d 1306; *Stockton v. Industrial Comm'n* (1977), 69 Ill. 2d 120, 124-25, 370 N.E.2d 548; *South Chicago Community Hospital v. Industrial Comm'n* (1969), 44 Ill. 2d 119, 121-22, 254 N.E.2d 448; *Downey v. Industrial Comm'n* (1969), 44 Ill. 2d 28, 29, 253 N.E.2d 371.

The *Fisher* court noted, *sua sponte*, that it could assert jurisdiction over the appeal because the remand order constituted a final and appealable order. The court based its decision on the content of the order, recognizing that it "was specific in nature and left no discretion with the Merit Commission. There was nothing left for the Merit Commission to do except comply with the circuit court's order or appeal." *Fisher*, 191 Ill. App. 3d at 113, 547 N.E.2d at 680.

The same can be said here. The court's March 15, 1991, order remanded the cause back to the Board with specific instructions to discharge Cajda. The Board had no discretion; its only option was to comply with the order of the trial court.[2]

Cajda, while discounting the applicability of *Fisher*, points to this court's decision in *Board of Education v. Box* (1989), 191 Ill. App. 3d 31, 547 N.E.2d 627, as being analogous to the instant case. There, the board sought circuit court review of a hearing officer's determination that a tenured teacher should not be discharged as a sanction for sexually abusing his students. The trial court reversed and remanded, ordering the hearing officer to "make findings which were not in conflict with each other and to decide the issues according to the law." *Box*, 191 Ill. App. 3d at 36, 547 N.E.2d at 630.

On remand, the hearing officer complied with the court's instruction and found that the facts warranted discharge as a sanction. Box sought administrative review of the second hearing and the circuit court affirmed the hearing officer's determination. Box appealed. On appeal, the board of education argued that the trial court's remandment order was final, and therefore, given that the notice of appeal was filed nearly six months after the alleged "final order," the appellate court was without jurisdiction. The *Box* court rejected that argument, holding that the first order was interlocutory and, therefore, not appealable.

While the two cases share similarities, one essential difference renders *Box* inapposite to the case at bar. In *Box*, the trial court's order obligated the hearing officer to make new, consistent findings of facts and to redetermine the issues in the case in accordance with ap-

---

[2]Cajda argues that *Fisher* is inapplicable to the facts here because, unlike this case, the opinion in *Fisher* did not state that the agency conducted any hearings; nor did the merit commission impose any punishment on the plaintiff. The two "distinguishing" factors Cajda draws the court's attention to have no impact on *Fisher*'s central holding that a trial court's order which remands a cause to the agency for a specific purpose and leaves no discretion to the agency to accomplish that purpose is final and appealable.

plicable law. In short, the trial court commanded the hearing officer to consider the matter anew, a direction that exemplifies the type of order *Wilkey* contemplated as being nonfinal. *Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 844 (" '[W]here [the] cause is remanded for a new trial or other further proceedings involving disputed questions of law or fact, the judgment *** is not of a final character' "). (Citation omitted.)

■ Here, in contrast, the remand order of March 15, 1991, resolved the dispute. The Board was instructed only to enter an order of discharge; the trial court left it no facts to redetermine or any legal issues to redecide—the archetypical remand order that the *Wilkey* court identified as being substantively final and thus appealable. *Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 844.

The last issue that Cajda raises is that the March 15, 1992, order could not be final as neither the court nor the parties viewed it as such. He directs our attention to the colloquy between the trial court and counsel that day, the salient portion of which, after the court had issued the order, reads as follows:

"THE COURT: Is this a ruling [construing section 25—30 of the Municipal Code of Chicago to mandate discharge for any violation of the Chicago residency requirement] of first impression?

Mr. Roddy [counsel for Cajda]: Yes

THE COURT: This is the first one.

Mr. Roddy: Yes.

THE COURT: *I think we ought to get on with appeal. There may be some grounds there.*

Mr. Roddy: *It can't, Judge. It [the cause] has to go back to the police board now. They can either follow the order or not, and then it comes back.*

Ms. Margolis [counsel for Superintendent Martin]: I believe possibly the procedure is to reverse and remand for entry of an order consistent with your finding, and it should be discharged.

Mr. Roddy: They [the police board] will either obey your order or not.

THE COURT: Once they do, then you come back here. Then you go up." (Emphasis added.)

At first, the trial court apparently believed that it issued a final order which was immediately appealable. The court, upon being informed that its determination was one of first impression, urged Cajda to "get on with [the] appeal," as it felt Cajda may have had valid grounds. Cajda's counsel erroneously disaffirmed the court of its be-

lief that the order was final. Cajda's emphasis on the court's misunderstanding of the law is therefore misplaced, as the court's error resulted from his attorney's statements.

More significant and completely dispositive of this issue, "[t]o vest the appellate court with jurisdiction a party must file a notice of appeal within 30 days after entry of judgment appealed from." (*Lombard v. Elmore* (1986), 112 Ill. 2d 467, 471, 493 N.E.2d 1063, 1065.) Compliance with the deadlines for appeals in Supreme Court Rule 303 is mandatory and jurisdictional (*In re Application of County Treasurer and ex-officio County Collector of Cook County for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for 1984* (1990), 208 Ill. App. 3d 561, 567 N.E.2d 486); *Schneider v. Vine Street Clinic* (1979), 77 Ill. App. 3d 946, 947, 397 N.E.2d 194, 195 (and cases cited therein)), and appellate jurisdiction may not be conferred by *laches*, consent, waiver or estoppel. *Jenner v. Wissore* (1988), 164 Ill. App. 3d 259, 517 N.E.2d 1220; *Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 365 N.E.2d 102.

The notions of the court and the parties as to the finality of an order will not render a final order nonfinal. (*Altschuler v. Altschuler* (1948), 399 Ill. 559, 78 N.E.2d 225 (stating that the finality of an order turns on its substance and effect, and not the characterization given by the trial court); *Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 424 N.E.2d 6 (finality of order depends on substance not form).) Nor will a trial court's misapprehension of the law allow an appellant to file his notice of appeal more than 30 days after the trial court issues what actually constitutes a final order. (*Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610 (holding that trial court has no authority to extend time limit for filing a notice of appeal).) Therefore, Cajda's notice of appeal, filed in July 1991, was untimely; thus, this court is without jurisdiction to entertain his appeal.

Appeal dismissed.

HARTMAN, P.J., and McCORMICK, J., concur.