THOMAS C. HYNES, Assessor of Cook County, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.—INDIANA HARBOR BELT RAILROAD COMPANY *et al.*, Plaintiffs-Appellees, v. ROGER SWEET, Director, The Department of Revenue, Defendant-Appellee (Consolidated Rail Corporation, Plaintiff-Appellee and Cross-Appellant; Thomas C. Hynes, Assessor of Cook County, *et al.*, Defendants-Appellants and Cross-Appellees).

First District (2nd Division)   Nos. 1—91—2237 through 1—91—2240,
1—92—1097 through 1—92—1102, 1—92—1891 through 1—92—1894,
1—92—3648 cons.

Opinion filed January 31, 1995.

698

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Mary T. Nicolau, Kathleen M. McGury, and Dean M. Victor, Assistant State's Attorneys, of counsel), for appellants.

Neil Hartigan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellees Department of Revenue and Roger Sweet.

Lord, Bissell & Brook, of Chicago (David R. Schmidt, Hugh C. Griffin, and Sandra K. Macauley, of counsel), for appellees Indiana Harbor Belt Railroad Co., Atchison, Topeka & Santa Fe Railway, and Consolidated Rail Corp.

Dillon & Nash, Ltd., of Chicago (David C. Dillon, of counsel), for appellees Belt Railway Company of Chicago, Chicago & Western Indiana Railroad, and Illinois Central Railroad.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The action before us, which is actually the consolidation of 15 separate appeals, stems from an initiative of the Cook County assessor (Assessor) in 1987, when he formed a "Railroad Task Force" and charged it with the responsibility of ensuring that all properties owned by railroads and situated in Cook County which were required to be assessed by his office were in fact being so assessed. The impetus for the formation of the task force can be ascribed to the complex statutory and regulatory scheme for the assessment and taxation of realty owned or controlled by railroads contained in what were then sections 79 through 90 of the Revenue Act of 1939, which were repealed and reenacted as sections 11—70 through 11—125 of the Property Tax Code (Ill. Rev. Stat. 1987, ch. 120, pars. 560 through 571 (now 35 ILCS 200/11—70 through 11—125 (West Supp. 1993))) (the Act), and sections of title 86 of the Illinois Administrative Code (86 Ill. Adm. Code §§ 110.105, 110.145 (1988)).

Under the Act, any realty which qualifies as "operating property" is to be assessed by the Illinois Department of Revenue, which in turn distributes the equalized assessed value of the taxable property of every railroad to the respective taxing districts entitled to it "in the proportion that the length of all the track owned or used in such taxing district bears to the whole length of all the track owned or used" in Illinois, except for buildings having an original cost exceed-

ing $1,000. Ill. Rev. Stat. 1987, ch. 120, pars. 560(2), 567 (now 35 ILCS 200/11—70(b), 11—110 (West Supp. 1993)).

The Act distinguishes between operating property and "non-carrier real estate," which is simply realty owned by a railroad but which is not used for the purpose of operating a train, nor held by it for such a use in the future; noncarrier realty, in contradistinction to operating property, is to be locally assessed. (Ill. Rev. Stat. 1987, ch. 120, pars. 560(2), (4) (now 35 ILCS 200/11—70(b), (d) (West Supp. 1993)).) The Act obligates the railroad to provide to the Department each year a schedule of all realty it holds for right-of-way, either owned or leased. (Ill. Rev. Stat. 1987, ch. 120, par. 562 (now 35 ILCS 200/11—85 (West Supp. 1993)).) The railroad must also provide the Department with a list of noncarrier real estate it owns, and this information is required to be forwarded by the Department to the assessing official in the county where the realty is situated in order that the noncarrier realty may be assessed "in the same manner as other similar property belonging to individuals." Ill. Rev. Stat. 1987, ch. 120, par. 564 (now, as amended, 35 ILCS 200/11—95 (West Supp. 1993)).

In order to facilitate the goals of the Act, it authorizes the Department to promulgate rules and regulations, which are to have the same force and effect as the statute so long as they are not inconsistent with it. (Ill. Rev. Stat. 1987, ch. 120, par. 571 (now 35 ILCS 200/11—125 (West Supp. 1993)).) Pursuant to this authority, the Department adopted the regulations contained in sections 110.105 and 110.145 of title 86 of the Illinois Administrative Code. (86 Ill. Adm. Code §§ 110.105, 110.145 (1985).) Section 110.105 provides that after the railroad submits its annual schedule of noncarrier property to the Department, that agency will transmit copies of the forms to the clerk of the county in which the property is situated. The regulation then directs the clerk to send the forms to his or her county's assessing official.[1]

That officer is granted 30 days from the date of transmittal by

---

[1]In *Soo Line Railroad v. Hynes* (1995), 269 Ill. App. 3d 81, we took note of the fact that the insertion of the clerk into this regulatory scheme does not conform with the law. The Property Tax Code itself expressly provides that the Department is to transmit the listing of nonoperating property directly to the "proper assessing officials of each county in which the noncarrier real estate may be located." (Ill. Rev. Stat. 1987, ch. 120, par. 564 (now, as amended, 35 ILCS 200/11—95 (West Supp. 1993)).) County clerks are not assessing officials in any sense of the term; they are involved only in the levying process. County collectors are just what the title implies: they collect the property tax. Since the regulation is inconsistent with the statute, it has

the Department to give her or him the opportunity to ascertain whether the list contains all railroad-owned realty in the county which qualifies as "non-carrier real estate," and if it does not, to register his or her objections with the Department regarding the mischaracterization of the disputed properties. Section 110.145 sets forth the procedure by which the Department is to determine whether the railroad has properly identified its real estate either as State-assessed operating property or locally assessed noncarrier realty.

The creation of the task force marked a change in the policy of the Assessor's office, as before 1987, it had never challenged any railroad's characterization of its realty. For the 1987 tax year and thereafter, however, the task force intended to ensure that all of the realty situated in Cook County, and which the railroads described as operating property in their schedules submitted to the Department, was properly categorized.

As required by its regulations, the Department transmitted to the Cook County clerk the railroad-submitted schedules for the 1987 tax year, sending them in two separate batches. The first group was sent on August 7, 1987, under cover of a memorandum misdated August 7, 1986. The second, although presumably sent later, was accompanied by the same misdated letter. The clerk's time-date stamp showed that the first batch was received by that office on August 10, 1987, and the second installment arrived on September 15, 1987.[2]

Faced with the challenge of investigating some 800 parcels of realty, the task force soon concluded that it would not be able to seek verification of the character of all of the property involved and still meet the 30-day deadline for the filing of objections imposed by section 110.105 of the Department regulations. (86 Ill. Adm. Code §§ 110.105, 110.145 (1985).) To head off any potential problems, officials from the Assessor's office met with Paul Wiley, who was then the deputy director of the Department's Property Tax Administra-

---

no force or effect under the very terms of the Act. (Ill. Rev. Stat. 1987, ch. 120, par. 571 (now 35 ILCS 200/11—125 (West Supp. 1993)).) However, this is of no consequence in the instant case because, as was true in *Soo Line*, defendants did not raise the issue here or in the circuit court. In any event, they do not claim that but for this unenforceable addition of the clerk they would have filed the objections within the 30-day limit prescribed by the Department; thus, they have waived the point. See 134 Ill. 2d R. 341(e)(7).

[2]As they also did in *Soo Line*, defendants mention in their brief that the schedule containing the disputed parcels in the instant case could have arrived in the latter batch. This suggestion is demonstrably incorrect, however, when one considers that the Assessor filed his objections five days before the second batch arrived.

tion Bureau, and secured from him assurances that the Department would excuse a late filing of objections by the Assessor. Wiley also advised the Assessor that he could begin assessing locally any parcels to which he objected, subject to later correction, if need be, depending upon the outcome of the Department's hearing on the objections.

On September 10, 1987, 34 days after the schedules were sent to him by the Department, the Assessor filed 409 objections to the railroads' classification of realty situated in Cook County. In the meantime, while awaiting a decision on the objections by the Department, the Assessor proceeded as advised by Wiley and began to assess the disputed property as though it were noncarrier realty. The Assessor mailed to the railroads in November 1987 his notices of proposed assessment on the parcels which they had listed in their submitted schedules as "operating property," but to which characterization he objected.

That same month, the Department certified the railroads' property schedules to the local taxing bodies and distributed to them the equalized assessed value of the property in accordance with the pertinent provisions of the Property Tax Code. (Ill. Rev. Stat. 1987, ch. 120, pars. 560 through 571 (now 35 ILCS 200/11—70 through 11—125 (West Supp. 1993)).) The Department's assessments did not take into account the co-existent assessments made by the Assessor on the parcels as to which he registered his objections, notwithstanding the assurances of Wiley to the contrary. When the railroads learned of the late-filed objections, as well as the double assessment they produced, they protested to the Department that it should declare them null and void.

In a letter dated July 1, 1988, the Director of the Department, defendant Roger Sweet, informed the Assessor of the Department's decision to reject his objections for tax year 1987 because of the untimeliness of their filing. The Director concluded that since the 30-day requirement of the regulation was mandatory, the Department had no jurisdiction to entertain his complaints. He also advised him that under Department regulations, the Assessor could apply, within 20 days of the rejection, for a hearing on the Department's disposition of his objections. On July 20, 1988, the Assessor made his formal request for a hearing and urged the Department to reevaluate the sudden reversal of its position regarding the 30-day deadline.

The Department set September 19, 1988, as the date upon which it would review its determination that it could not consider untimely objections. But, since this date was more than 35 days after the original July 1, 1988, rejection of his objections, the Assessor assumed, incorrectly it turns out, that if he waited for the Department's review

of that decision, it would foreclose his bringing an action to seek judicial review of the July 1, 1988, ruling. Consequently, on August 8, 1988, the Assessor filed a petition under the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.* (now 735 ILCS 5/3—101 *et seq.* (West 1992))), contesting the July 1, 1988, ruling in which the Department found that the 30-day limit on filing was a jurisdictional prerequisite to its consideration of objections by local assessors to the railroads' classification of their realty either as "operating property" or as "non-carrier realty." Thus, the issue as to the consideration of untimely objections remained pending before the Department.

Meanwhile, six railroads, some of whose realty had been the subject of the Assessor's objections, filed four different complaints in circuit court during the month of August 1988. In these suits, they sought declaratory and injunctive relief to prevent the Assessor from assessing the disputed parcels for the 1987 tax year and to prevent the other Cook County officials from levying or attempting to collect the tax on the property at issue. Each plaintiff also named as a defendant Roger Sweet in his capacity as Director of the Department of Revenue, seeking to enjoin him and his Department from holding the hearing which had been set for September 19, 1988. On motion of defendant Sweet, the court consolidated the railroads' actions with the Assessor's pending petition for administrative review only as to the identical issues involving either Sweet or the Department.

Each plaintiff moved for summary judgment on the objections for the 1987 tax year. On February 25, 1992, the circuit court granted their motions, holding that the Assessor's objections for that year were filed too late. This ruling meant that the disputed parcels were to be classified as operating property, which the statute prescribes as assessable only by the State; and as a consequence thereof, the court held that the levy which had been based on the illegal assessment by the Assessor was also illegal and therefore void. It therefore ordered the defendant county officials to refund to the railroads the monies which had been previously paid into a tax escrow account created by order of court for the purpose of these actions. On March 26, 1992, the county official defendants filed a notice of appeal from this order, naming all railroad plaintiffs as appellees.

While the actions concerning the 1987 assessment of the railroad property were pending, the Cook County Assessor reasserted for the purpose of the 1988 tax year his 1987 objections as to all the realty he had objected to then, this time filing them within the 30-day deadline. Even before the Department ruled on his objections for 1988, however, he again assessed the disputed parcels, continuing to

act on Wiley's "authority."[3] Four of the railroads, Conrail, Belt Railway, Illinois Central and Chicago & Western Indiana, without filing new actions or seeking to amend their pending complaints, moved to extend the court's August 29, 1988, order creating an escrow account into which they would deposit the property taxes levied on the basis of the allegedly illegal local assessment, which the court granted, thereby intending to include within the ambit of the action relating to the 1987 tax year the objections and assessments for the 1988 tax year.[4]

By a stipulation dated April 21, 1992, the Assessor and the four plaintiff railroads mentioned in the previous paragraph agreed to an extension of the escrow agreement to cover the 1989 and 1990 tax years, and they agreed that the evidence presented for the 1988 year would be applicable to those two years.[5]

When the parties appeared before the circuit court to discuss the

_____

[3]Although it appears to be undisputed that Wiley informed the Assessor that he could assess the parcels to which he objected for the tax year 1987, we discover nothing in the record to indicate that anyone in the Department gave the Assessor the same instructions for subsequent tax years, or that the permission given for 1987 was to be construed as having been granted in perpetuity. In light of the disposition we make of this case, however, the matter is of no import.

[4]Consequently, the circuit court's judgments covering tax year 1988 and their subsequent application to 1989 and 1990 have no legal effect on the disputed parcels of Santa Fe and Indiana Harbor Belt. On appeal, they are concerned only with the correctness of the court's orders covering the 1987 tax year.

[5]Defendant county officials point out that plaintiff railroads' complaints put at issue only tax year 1987 and that the method described above was not a proper means of extending the court's jurisdiction over the claims for the 1988-90 tax years. The defendants reason from this contention that since there was no complaint before the court for those tax years, its findings and rulings for those years are void.

Defendants' assertions are now moot as both section 2—616(c) and Supreme Court Rule 362 provide that pleadings may be amended at any point, either before or after judgment, to conform them to the proof adduced at trial. (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(c) (now 735 ILCS 5/2—616(c) (West 1992)); 134 Ill. 2d R. 362.) We have granted plaintiff railroads' motions in this court to amend their pleadings to encompass tax years 1989-1990. There was ample proof presented to cover tax year 1988 and the parties stipulated, with the circuit court's approval, that the proof offered for that year would obtain as well with respect to tax years 1989 and 1990. Therefore, we find no prejudice accruing to defendants as a result of the amendments (see *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*

actions for the 1988 tax year, the court, citing its desire not to be bogged down by the volume of evidence which would be involved in those cases, suggested to the parties that to resolve the dispute, they present their evidence to an administrative law judge (the ALJ) to be borrowed from the Department. The court analogized the intended role of the ALJ to that of a master-in-chancery, stating that it would consider his recommendations to be advisory only and would accord them no deference. It also reserved the right to accept evidence in addition to that presented to the ALJ. Although the Assessor's objections to the Department's classification of the disputed property for the 1988-90 tax years were awaiting hearings before that agency, all of the parties agreed to the court's suggested procedure.

At any rate, the ALJ held extensive evidentiary hearings on this matter from October 23, 1989, until January 25, 1990. In his comprehensive advisory memorandum outlining his findings of fact and conclusions of law which he submitted to the court, he determined that the Assessor's objections to all but four parcels were without merit.

Upon receipt of the ALJ's recommendations, the court afforded the parties the opportunity to file exceptions to them. Thereafter, the court accepted all of the ALJ's findings and conclusions, except the conclusion that the Assessor acted fraudulently in assessing the realty. On May 31, 1991, it entered judgments in favor of the four above-mentioned plaintiff railroads as to the year 1988, and ordered defendant collector to release the monies held in escrow to the respective railroads, excepting from the court's orders the four parcels of Conrail which the ALJ had found to be noncarrier realty. Defendant county officials filed notices of appeal from these orders on June 28, 1991, even though the claim for the 1987 tax year remained in the circuit court and the orders lacked the requisite language of Rule 304(a). 134 Ill. 2d R. 304(a).[6]

Some nine months after resolving the claims for 1988, the court, as previously noted, disposed of the claims for 1987 by granting plaintiff railroads' motions for summary judgment on February 25, 1992. Defendants filed their notices of appeal from these orders on March 26, 1992. Then, on April 24, 1992, pursuant to the stipulation

_____

(1966), 68 Ill. App. 2d 297, 216 N.E.2d 282), however futile our permitting it, for as explained in detail below, we are confronted with other jurisdictional defects in the appeals relating to tax years 1988-1990 which preclude our consideration of the merits of those appeals.

[6]Conrail filed its cross-appeal on July 12, 1991.

of the parties, the court, extending its orders for the 1988 tax years, released the escrow funds held for the 1989 and 1990 tax years. The notices of appeal from this group of orders were filed by defendants on May 25, 1992. Finally, the court dismissed the unrelated, consolidated action for administrative review for want of jurisdiction on either August 17, 1992, as argued by the Department, or on September 25, 1992, according to defendants. A notice of appeal from this order was filed on October 26, 1992.

## I

We first address, as we must, our jurisdiction over the various orders of the circuit court which are the subject matter of the consolidated appeals in this case. The need for this inquiry is especially acute here because of the unique procedures undertaken in the circuit court. Consequently, in order to ascertain whether or not we have jurisdiction in this proliferation of cases, we must wend our way through the Thesean labyrinth of pleadings, stipulations, extensions of escrow agreements, orders and notices of appeal presented to us by the record on review.

## A

█ In the interest of simplicity, we begin our analysis with the orders covering tax years 1989-1990, but only momentarily at this juncture, for as was adumbrated in footnote 5, and as we explain in greater detail below, we are of the view that the circuit court lacked jurisdiction to entertain the railroads' claims for those years. At this point then, we will simply note that we assert appellate jurisdiction over the orders covering those years only insofar as is necessary to conclude that the circuit court was without subject matter jurisdiction over those claims. See *In re Estate of Randell* (1973), 12 Ill. App. 3d 640, 298 N.E.2d 735 (engaging in an analysis of the circuit court's subject matter jurisdiction after first recognizing that an appeal from an order of the circuit court lacking subject matter jurisdiction did not confer jurisdiction on the appellate court).

## B

We next turn to the orders for 1988, the first tax year disposed of by the court. The Department points out that when those orders were handed down, the claim for the 1987 tax year was still pending. It reasons, accordingly, that since the railroads' "actions" remained before the circuit court, those orders could become appealable pursuant to Supreme Court Rule 304(a) only if they included the express written finding of the court "that there [was] no just reason for delaying enforcement or appeal" thereof. Since the orders appealed from

lacked this "magic" language, the notices of appeal citing those orders were premature and thus a nullity. (See Eaton, *The Notice of Appeal*, in Illinois Civil Appellate Practice ch. 8, § 8.7 (Ill. Inst. for Cont. Legal Educ. 1993) ("A notice of appeal that is filed before the entry of a final judgment, or Rule 304(a) certification if necessary, is a nullity"); *cf. Texaco, Inc. v. Barnes* (1978), 60 Ill. App. 3d 696, 377 N.E.2d 187 (holding that a notice of appeal filed immediately after the court gave its judgment orally but before it entered a written order could not invest the appellate court with jurisdiction, unless amended within 30 days of the entry of the written order).) Therefore, the Department concludes, those notices cannot now be reinvigorated so as to activate our jurisdiction over the orders cited therein.

■ We agree with the Department's contentions and are compelled to find that we may not assert jurisdiction over the merits of the appeals from the orders relating to the 1988 claims for the reason that the words of art of Rule 304(a) that are missing from those orders preclude our exercising jurisdiction for that tax year. *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322 (observing that in the absence of the required Rule 304(a) express finding, the circuit court retains jurisdiction over a claim it had previously decided until all of the issues in the action have been resolved).

In reaching that determination, we consider the case of *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380, to be distinguishable. In *Burtell*, the supreme court held that a notice of appeal may be liberally construed so as to encompass orders which were not specifically mentioned in the notice upon which jurisdiction is predicated, provided that the judgment cited in the notice could be understood to subsume the interlocutory orders which were not referred to in the notice, but which were " 'step[s] in the procedural progression leading' to the judgment specified in the notice of appeal. [Citation.]" *Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383.

In *E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 427 N.E.2d 181, the court held that it could not employ the *Burtell* doctrine to salvage its review of judgments which had been the subject matter of a prematurely filed notice of appeal. In that case, the trial court granted the plaintiff a judgment to compensate it for work done in excess of that called for in the construction contract it had entered into with the defendant municipality. The defendant took an appeal from that order without securing a Rule 304(a) certification, even though the plaintiff's action for prejudgment interest was still pending before the circuit court. About a month later, the court entered an order on the claim for

prejudgment interest, completely disposing of the action. The defendant filed a notice of appeal from that order as well, specifically citing only the order granting the interest.

The court held that the first notice was ineffective due to its prematurity. It next determined that *Burtell* could not be used to validate its power to review the first order because the earlier appeal was taken from an order disposing of a separate, distinct claim. As a result, *Burtell* could not apply, and defendant, by its failure to make specific reference to the earliest order in its second notice of appeal, was foreclosed from appealing from it.

Here, as in the first judgment order in *Melahn Construction*, the orders relating to the 1988 tax year were not mere interlocutory decisions which could be said to have led to the court's ultimate judgment in this action, but were claims separate and distinct from the other tax years considered, or at the very least, from the 1987 tax year. (See *Turn Verein Lincoln v. Paschen* (1960), 20 Ill. 2d 229, 230, 170 N.E.2d 111, 113 ("[A] cause of action for taxes for one year is not the same as or identical with a cause of action for taxes for subsequent years").) As a consequence, we may not construe the valid notices of appeal dated March 26, 1992, which specifically and exclusively refer to the orders covering the 1987 tax year, which went only to the timeliness of the Assessor's objections for that year, to subsume or include the 1988 orders. (See 134 Ill. 2d R. 303(c)(2) (the notice of appeal "shall specify the judgment or part thereof appealed from"); *United States Fidelity & Guaranty Co. v. Lee* (1992), 230 Ill. App. 3d 635, 594 N.E.2d 1329; see generally 6 C. Nichols, Illinois Civil Practice § 6135, at 150-53 (rev. ed. 1993).) We note that the railroads obviously believed that they had viable appeals pending for the 1988 tax year and saw no reason to include those judgments in the notices of appeal from the court's judgment orders relating to tax year 1987; it goes without saying, however, we are without authority to broaden our jurisdictional limits beyond those established by rule. Therefore, we find that there are no valid notices directed against the orders for the 1988 tax year, and without that singular wellspring of appellate authority, we can do no more than dismiss the appeals for that year.[7] *Bean v. Norfolk & Western R.R. Co.* (1980), 84 Ill. App. 3d 395, 405 N.E.2d 418 (holding that the filing of a timely notice of appeal is the single, yet indispensable, procedural step for invoking the jurisdiction of the appellate court).

---

[7]Since the cross-appeal filed by Conrail suffers from the infirmity discussed above, our resolution of the appeals from the court's orders for 1988 applies with equal force to the cross-appeal as well.

By our order dismissing this consolidated appeal for the 1988 tax year due to the lack of Rule 304(a) language in the judge's orders, we by no means intend to approve by implication the trial court's taking of evidence and its determining the issues on the merits, which were still pending before, and therefore belonging exclusively to, the Department. However, since we clearly have no jurisdiction to review the court's orders relating to the 1988 claims, we need not belabor the point.

### C

■ Finally, although at this point it has become almost anticlimactic, we observe that we may exercise jurisdiction over the court's orders for the 1987 tax year, for when it disposed of these claims, there were no longer any related claims of the railroads pending in the circuit court. Therefore, because they required no Rule 304(a) language, the timely notices of appeal filed by defendants from those orders invested us with jurisdiction, and we reach the merits thereof in section IV of this opinion.

### II

We now focus on whether we may assert jurisdiction over the appeal from the court's disposition of the Assessor's petition for administrative review of the Department's July 1, 1988, decision that the 1987 objections were untimely. As previously mentioned, this action was consolidated with the railroads' actions for the convenience of the court, but only as to those issues involving Sweet or the Department. On August 17, 1992, the circuit court entered an order granting the Department's motion to dismiss the action on the ground that the court lacked subject matter jurisdiction over the claim since the Assessor filed the action before exhausting all of the remedies available to him in the Department. Later, on September 25, 1992, the court entered an identical order, adding to it only that the Assessor's complaint against the Department was dismissed, and including the express finding, pursuant to Supreme Court Rule 304(a), that there was no just reason to delay enforcement or appeal of its order. The Assessor filed its notice of appeal from this order on October 26, 1992.

The Department argues initially that since the August 17, 1992, order was substantively final and appealable, under Supreme Court Rule 303(a) (134 Ill. 2d R. 303(a)), the Assessor had 30 days from that date to file either a notice of appeal from that order or a post-trial motion attacking the judgment therein. Because he did not file an appeal from that order within 30 days or bring a timely post-trial mo-

tion directed against the judgment,[8] the Department reasons that we lack jurisdiction over this aspect of the instant consolidated appeal.

The Assessor responds that the order of August 17, 1992, was not an appealable final judgment, but rather was only the court's ruling granting the Department's motion to dismiss. According to the Assessor, this ruling would not be appealable until it was reduced to judgment, which did not occur until September 25, 1992. On that date, he continues, the court reaffirmed its earlier order, dismissed his claim against the Department and included the "magic language" of Rule 304(a).

■ Normally, determining when an order dismissing a complaint is final and appealable is done simply by reading the order. When it states that it is dismissed with prejudice, it is, of course, appealable, and conversely, one which indicates that it is dismissed without prejudice is obviously not. The problem arises, however, in those instances, as in the case at bar, where the court does not express whether it intended its order to be with or without prejudice. In such cases, to decide whether an order is final the reviewing court must look to the substance of what was decided therein. *Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 62-63, 610 N.E.2d 51, 63 ("We recognize *** that substance rather than form may determine whether a general order of dismissal represents a final adjudication"); see also *McMann v. Pucinski* (1991), 218 Ill. App. 3d 101, 578 N.E.2d 149; *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293; *Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865.

Here, the substance of the August 17, 1992, order was to dismiss the Assessor's complaint on the ground that, due to his failure to exhaust all available administrative remedies, the circuit court had no subject matter jurisdiction over the claim. This is not the type of defect which can be changed or corrected by amending a complaint; nor does it seem likely, as evidenced by the identical order entered more than a month later, that the court considered its order amena-

---

[8]Although the court did enter an order after the one filed on August 17, 1992, the record does not demonstrate that this second order was at the prompting of a post-trial motion of the Assessor directed against the August 17 order. In fact, the record is silent as to what or who moved the court to enter the order on September 25, 1992. Nevertheless, since the Assessor as appellant has the obligation of providing a record which shows that we have jurisdiction (see *People ex rel. McWard v. Chicago & Illinois Midland R.R. Co.* (1944), 388 Ill. 325, 57 N.E.2d 853), we must assume that whatever it was that caused the court to file the second order, it was not a timely motion directed at the judgment.

ble to reversal on reconsideration. Thus, it appears that as soon as the court decided that it lacked jurisdiction, that decision would have been immediately appealable.

The Assessor disagrees with this conclusion and he analogizes this case instead to *Ben Kozloff, Inc. v. Leahy* (1986), 149 Ill. App. 3d 504, 501 N.E.2d 238. There, the court acknowledged that where an order of dismissal is silent as to its finality, the substance of the order will dictate whether or not it was final and appealable. The court determined that the circuit court's dismissal of a complaint alleging breach of contract was not final because the trial judge indicated in open court that the factual insufficiency of the complaint, a failure to allege adequate consideration to support enforcement of a restrictive covenant, could be corrected by amendment.

Surely, this fact alone establishes that *Kozloff* has no applicability to the order *sub judice*. As previously stated, there is nothing in the court's order or anything in the record on review which would show that the court believed that the defects in the complaint could be corrected by amendment. Moreover, even if the court did entertain this belief, considering that there was indisputably no final administrative ruling to be reviewed, it was clearly impossible for the Assessor to correct the flaw. Accordingly, the substance of the circuit court's order of August 17, 1992, was to dismiss the Assessor's complaint with prejudice, meaning that the order was immediately appealable from that date. That being the case, since the notice of appeal in this case was not filed within 30 days of that date, we have no jurisdiction to consider an appeal from that order. (See *Martin v. Cajda* (1992), 238 Ill. App. 3d 721, 728, 606 N.E.2d 566, 571.) Therefore, we dismiss appeal number 1—92—3648.

## III

Our analysis of the quagmire of jurisdictional defects which plague this case cannot end there, however, for we must still explain that which is prefigured in footnote 5: that the circuit court lacked jurisdiction to hand down its orders dated April 24, 1992, concerning tax years 1989-90 because of its belated attempt to bring those claims within its jurisdiction. To reiterate, the circuit court issued orders "extending" to those tax years its disposition of the identical claims for tax year 1988.

As mentioned above, we have permitted plaintiff railroads to amend their pleadings to conform to the proof, viewing the circuit court's order of extension as, in effect, permitting the pleadings to be amended. (See 134 Ill. 2d Rules 362, 366(a)(1); see also *Davis v. United Fire & Casualty* (1980), 81 Ill. App. 3d 220, 400 N.E.2d 984; *Love v.*

*Levisey* (1956), 11 Ill. App. 2d 531, 137 N.E.2d 869.) Even so, we are compelled to hold that the circuit court was without jurisdiction to rule on the 1989-90 tax years.

■ The railroads invoked the jurisdiction of the circuit court by the filing of their complaint for declaratory and injunctive relief from the alleged illegal assessments and levies for the 1987 tax year. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—201 (now 735 ILCS 5/2—201 (West 1992)); see also *Adams v. Klink* (1991), 210 Ill. App. 3d 630, 637-38, 569 N.E.2d 542, 547 ("When the plaintiffs here filed their complaint ***, they invoked the circuit court's jurisdiction over the subject matter *** [of] their amended complaint").) When the circuit court issued its orders disposing of the 1987 tax year claims, there were no other claims of the railroads still pending before it; the court had fully decided all of the disputes in the cause which had been presented to it up to that point. In short, it had issued its final orders in all of the actions brought by the railroads' complaints. (See *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826.) Thus, it had jurisdiction over the railroads' actions only until defendants filed their notices of appeal from those orders on March 26, 1992.

Since jurisdiction over all of the railroads' causes of action departed from the circuit court as of March 26, 1992, the court's subsequent extension of its 1988 orders to tax years 1989 and 1990 on April 24, 1992, was void. (See *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501, 420 N.E.2d 699.) At that point, the court's jurisdictional authority over the 1989 and 1990 actions could be invoked only by the filing of a new complaint within the applicable statute of limitations, asserting the claims for those tax years.

We attach no significance to the fact that the administrative review action which had been consolidated with the railroads' action was still pending at that point. That case had been consolidated with the railroads' actions, as we have noted above, only for convenience' sake and only for a limited purpose, which, it has been held, has no effect on the jurisdiction of either the circuit court or this court.

For example, in *Heritage Pullman Bank v. American National Bank & Trust Co.* (1987), 164 Ill. App. 3d 680, 518 N.E.2d 231, the circuit court consolidated a forcible entry and detainer action with a pending foreclosure action concerning the same parcel of realty. The court subsequently dismissed the detainer action, from which the plaintiff took an appeal. The defendant challenged the jurisdiction of the appellate court, arguing that, given the consolidation order, the dismissal was an unappealable interlocutory order because it lacked the requisite finding of Rule 304(a). The court disagreed and held

that where separate actions retain their distinct docket numbers but are combined to permit a single hearing on common issues, the consolidation does not result in a merging of the two matters into a single suit. Thus, the absence of Rule 304(a) certification of the earlier order was not fatal to its appeal, even though the other action of the consolidation remained pending.

Here, there can be no doubt that the administrative review action did not arise from the complaints of the railroads. In fact, the petition for review does not even mention the railroads. Furthermore, each action retained its original docket number and the court specifically stated in its order of consolidation that it was consolidating them with the railroads' cases only as to identical issues and parties, thus eliminating any possible inference that it intended a full merger of the actions. Accordingly, the pendency of that action after the court disposed of the railroads' suits is of no warrant, and we must conclude that the court lacked jurisdiction over their claims for 1989 and 1990. Its orders for those years are therefore void and are hereby vacated.

## IV

Finally, reaching the merits of the issues raised regarding the only tax year over which both we have, and the circuit court had, jurisdiction, we next consider whether the circuit court correctly determined that the Assessor's objections for the 1987 tax year were untimely because compliance with the Department's 30-day deadline was mandatory. It concluded, therefore, that the Department could not adjudicate the objections raised by the Assessor, which were filed with the Department four days after the time for filing such objections had passed.

■ The issues we address here are identical to those raised in *Soo Line Railroad v. Hynes* (1995), 269 Ill. App. 3d 81. To summarize, we held in that case that the 30-day limit for the filing of an assessing official's objections was mandatory; accordingly, Deputy Director Wiley could not have suspended the strict enforcement of the deadline. In addition, since Wiley was acting beyond his authority, the Department could not be estopped from requiring that the objections be timely filed.

We also held in *Soo Line* that in the absence of proper agency adjudication of the Assessor's objections to realty designated as "operating property," only the Department could assess such property. Accordingly, even though the Assessor had Wiley's "approval" to begin assessing the disputed parcels, this grant of "authority" was merely illusory.

As a matter of law, accordingly, the Assessor was powerless to assess such realty. Therefore, we affirmed the circuit court's injunction barring such illegal assessments and also affirmed its injunctions against the levying or collecting of taxes based on those assessments. Since the instant assignment of error is an exact replication of issues addressed in *Soo Line*, we agree once more with the circuit court that the objections leveled by the Assessor in 1987 were not timely filed and thus could be accorded no reception by the Department.

For the foregoing reasons, appeal numbers 1—91—2237, 1—91—2238, 1—91—2239, 1—91—2240 and 1—92—3648 are dismissed for want of appellate jurisdiction. The judgments in appeal numbers 1—92—1891, 1—92—1892, 1—92—1893 and 1—92—1894 are vacated for want of subject matter jurisdiction; the judgments in numbers 1—92—1097, 1—92—1098, 1—92—1099, 1—92—1100, 1—92—1101 and 1—92—1102 are affirmed. Finally, the cross-appeals are also dismissed for want of appellate jurisdiction.

Dismissed in part, vacated in part, affirmed in part and cross-appeal dismissed.

DiVITO and McCORMICK, JJ., concur.