SECOND DIVISION 

November 12, 2002

No. 1-01-2411

MARGUERITE ULYSSE, 

Plaintiff-Appellant,

v.

JOHN R. LUMPKIN, DIRECTOR, THE DEPARTMENT OF PUBLIC HEALTH, and THE DEPARTMENT OF PUBLIC HEALTH, 

Defendants-Appellees.

)))))))))

)

)

Appeal from the

Circuit Court of

Cook County

No. 00-M1 450531

(transferred to Chancery)

Honorable

Robert V. Boharic,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff appeals an administrative decision removing her from the state registry of qualified certified nurse's aides (CNA) maintained by the Illinois Department of Public Health (the Department).  We affirm.  

The Department issued a formal notice to plaintiff on December 17, 1999, charging her with abusing a nursing home resident on November 11, 1999.  Plaintiff asked for a hearing to contest the allegations.  The following evidence was taken at the hearing.

Plaintiff testified that she had been a CNA for eight years and had worked at Ballard Health Care Center for four.   CNAs are responsible for feeding, changing and moving the residents to and from their beds.  Gertrude Streeter was plaintiff's supervisor.  Plaintiff had complained to Ballard management about Streeter's unfairness in assigning extra work.  Plaintiff claimed she was assigned work other CNAs refused to do.

Plaintiff worked the 6:30 a.m. to 2:30 p.m. shift.  She had been caring for an Alzheimer's patient for three to four months.  Plaintiff said that the patient was confused and could not remember what happened from one minute to the next.  On November 11, plaintiff was trying to move the patient from a wheelchair into her bed.  The patient began fighting and sliding down the chair.  Plaintiff called to Streeter for help four or five times before she came.  Streeter did not respond immediately because she was on the phone.  Plaintiff tried to tie the patient down as instructed by Streeter.  Plaintiff was kicked several times as she tried to restrain the patient.  Plaintiff denied slapping the patient and claimed that she only held the patient's wrists while telling her to stop fighting.  Plaintiff did not intentionally hit the patient.  Plaintiff believed that Streeter reported otherwise because she and Streeter were mad at each other.  

Plaintiff was interviewed by Sam Ogunro and Sue Mikals on November 11.  Ogunro is a nursing supervisor.  Mikals is the vice-president of clinical operations for Ballard.  Plaintiff told Ogunro and Mikals that she tried to grab the patient's hand but did not slap her, either on the face or the hand.  Plaintiff told the patient she was being "bad" and to stop fighting.  Mikals told plaintiff that she would be terminated because she had abused the patient twice–grabbing the patient's hand and telling the patient that she was bad.  Mikals told plaintiff she could prepare a letter in response and deliver it to Mikals the next day.  Plaintiff testified that she prepared a one-page letter and gave it to Mikals as instructed.  Plaintiff offered a copy of the letter into evidence.  The Department's objection to the letter's admission was sustained.  

Gertrude Streeter testified that she worked at Ballard as a licensed practical nurse.  Streeter was in charge of providing medical care to the residents, some of whom suffered from Alzheimer's.  Streeter also supervised the CNAs, including plaintiff. 

Streeter said that, on November 11, 1999, she and plaintiff were working the same shift.  At about 2 p.m. Streeter and plaintiff moved an Alzheimer's patient from a wheelchair to her bed.  Both then left the room.  Streeter and plaintiff returned to the room and noticed that the patient was trying to climb out of bed.  Streeter and plaintiff helped the patient to sit up.  The patient was agitated and flailed her arms and legs.  Plaintiff tried to restrain the patient's left wrist with a wall restraint when the patient kicked her in the face.  Plaintiff then slapped the patient in the face.  Plaintiff slapped the patient again minutes later.  Streeter told plaintiff that she was not supposed to hit the patient.  Plaintiff said that if she was hit, she would hit back.  Streeter examined the patient and noticed a red mark on her face.  Streeter reported plaintiff's conduct to Sam Onguro, the afternoon nursing supervisor.  

Streeter denied that plaintiff called several times for help in moving the patient before Streeter came to the room.  Streeter did not remember being on the phone.  Streeter said that if plaintiff called for help Streeter responded right away.  Streeter denied that the slapping was accidental.  

Streeter testified that she and plaintiff were friends and there was no tension between them.  There were no complaints about plaintiff hitting other patients.  Streeter did not recall whether plaintiff filed complaints against Streeter based on workload assignments.  Streeter said she divided the work evenly between the CNAs.  

Sam Ogunro testified that he is a registered nurse and nursing supervisor for Ballard.  Ogunro said that Alzheimer's patients were sometimes combative and hit CNAs caring for them.  

Ogunro learned of the November 11 incident at 2:30 p.m., about one-half hour after he came on duty.  Streeter explained to him that she and plaintiff were helping an agitated patient into bed when plaintiff was kicked and that plaintiff slapped the patient twice.  Ogunro told Streeter that he was required to report the incident to his supervisor, Sue Mikals.  Ogunro prepared a report for Mikals.  The signed report detailed what Streeter had told Ogunro.  

Ogunro met with Mikals.  Ogunro was present when Mikals called Streeter in to relate what happened.  Ogunro was also present when plaintiff was interviewed.  Plaintiff denied slapping the patient in the face.  Plaintiff said that after being kicked, she tapped the patient twice in the thigh and told the patient "don't do that, bad lady, bad lady."  Ogunro said that plaintiff demonstrated what she had done by tapping Ogunro on the thigh.  The pressure used was strong enough to cause injury.  

Plaintiff was told that her conduct amounted to verbal and physical abuse and that she would be terminated.  Plaintiff responded that she had been provoked.

Ogunro testified he had a good working relationship with plaintiff but that they often worked different shifts.  Ogunro also supervised Streeter when she worked evening shifts.  Ogunro admitted that morning shift employees had complained to him about Streeter's unfairness in assigning work.  Ogunro could not remember if plaintiff was one of those who complained.

The Department file was then offered into evidence.  The file included a copy of the notice charging plaintiff with abuse, plaintiff's request for a hearing, a Department abuse report, a one-page report prepared by Streeter, a one-page report prepared by Ogunro, Ballard's policies and procedures, and a three-page report prepared by Mikals.  Plaintiff objected to admission of the Mikals report when it was disclosed that Mikals would not be testifying.  The objection was overruled. 

The administrative law judge found that plaintiff committed physical abuse of a nursing home patient.  The judge found plaintiff's testimony was self-serving and not credible.  The finding of abuse was adopted by the Department.  The trial court entered an order affirming the Department order on May 22, 2001. 

Plaintiff argues on appeal that three adverse evidentiary rulings violated her right to a fair hearing.   Plaintiff cites no case law to support her argument.  We are persuaded by none of her claims of error.

Plaintiff first contends that the Mikals report was hearsay that should not have been admitted into evidence.  We disagree.

Hearsay is not admissible in an administrative hearing as a general rule.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 94, 606 N.E.2d 1111 (1992).  But the Department's regulations permit admission of "records and reports of health care facilities, doctors, nurses, physical therapists or other health care providers" without foundation or proof so long as the report or record does not include "affidavits or other documents specifically prepared for litigation."  77 Ill. Adm. Code §100.13(j) (Conway Greene CD-ROM 2002).  Section 100.13(h) allows otherwise inadmissible evidence so long as it is "a type commonly relied upon by reasonably prudent persons in the conduct of their affairs."  77 Ill. Adm. Code §100.13(h) (Conway Greene CD-ROM 2002). 

The Mikals report documented an investigation into the alleged abuse of a nursing home resident.  The report was not "specifically prepared for litigation" but was instead required by Ballard's policies and procedures.  The report also would have been reasonably relied on by those investigating an abuse allegation.  The report was properly admitted into evidence.  This result would not change if we were to agree that the Mikals report was inadmissible hearsay.  

The record contains Streeter's eyewitness testimony and testimony by Ogunro, the supervisor to whom the abuse was reported within one-half hour of the event.  Without reference to the Mikals report, the administrative law judge found Streeter and Ogunro more credible than plaintiff, whose testimony was discounted as self-serving.  The administrative law judge then mentioned the Mikals report as "yet another account" of what happened.  Where, as here, there is sufficient competent evidence to support an administrative decision, the admission of hearsay is not prejudicial error.  
Abrahamson
, 153 Ill. 2d at 94.  

Plaintiff next claims that she should have been allowed to use the Mikals report during closing argument to show contradictions in Ogunro's testimony.  Plaintiff cites no case law to support her single-paragraph argument.  

Plaintiff challenged the consistency of Ogunro's testimony during closing argument:

"COUNSEL:  In terms of Sam Ogunro's testimony, Sam appeared to have been very calm, cool and collected.  He was allegedly approached in confidence.  He didn't talk to [plaintiff].  He went straight to make a report, and when he did finally speak to [plaintiff] he demonstrated on his lap where and how [plaintiff] hit the leg.  That's [inconsistent] with the report that he was a part of with Sue Mikals.  So again I think that–

THE COURT:  How is it that he is part of Sue Mikals' report, I mean this report was generated–

COUNSEL:  He was at the meeting.

THE COURT:  He was at the meeting, but the report that you are referring to, I believe that's page 8, 9, 10, and 11 of the Department's exhibit is the report generated by Ms. Mikals.  I know the conclusion of it, it's got–it's not signed, but it says submitted by Susan Mikals, RN.

COUNSEL:  Yeah.  At the same time if you look at the language, the language reflects–second paragraph immediately after I received information from Sam I called Gertrude, and it talks about–

THE COURT:  This is Sue Mikals' report.

COUNSEL:  Of what happened with both of them present in the room.  The third paragraph talks about next, with Sam present, I attempted to contact [plaintiff]--

THE COURT:  Right, but these are Sue Mikals'–there's no mention that Sam Ogunro adopted this report or any of the representations in it, but–

COUNSEL:  Well, no, you're right, except evidently, part of what Sam had told her is contained in this report."

 Based on this exchange, the administrative law judge properly ruled that, because there was no evidence that Ogunro reviewed or adopted the Mikals report, Ogunro's testimony could not be contradicted with the report.  Plaintiff's statement that Ogunro was "part of " the Mikals report is a  misstatement of the evidence.

Plaintiff next claims that a ruling barring admission of a one-page letter she drafted and delivered to Mikals also denied plaintiff her right to a fair hearing.  We disagree.

Section 100.12(b) of the Department's rules requires each party to produce all documents that will be used at a hearing 21 days before the hearing date.  77 Ill. Adm. Code §100.12(b) (Conway Greene CD-ROM 2002).  It is undisputed that plaintiff failed to comply with this requirement.  Plaintiff's claim that the rule does not prohibit use of a document not timely produced overlooks section 100.13(l), which prohibits introduction of evidence not in compliance with section 100.12(b) absent a showing of good cause.  77 Ill. Adm. Code §100.13(l) (Conway Greene CD-ROM 2002).  Plaintiff made no showing of good cause here.  The letter was properly excluded.  

Plaintiff last claims that the Department's decision is against the manifest weight of the evidence.   Plaintiff argues that Streeter's vague and contradictory testimony that plaintiff slapped the patient twice was insufficient to sustain a finding of abuse.  Plaintiff adds that the Mikals report is incompetent hearsay that we must exclude in determining the manifest weight of the evidence.  See 
Polk v. Board of Trustees
, 253 Ill. App. 3d 525, 537, 624 N.E.2d 1366 (1993).  We already found that the Mikals report was properly admitted into evidence at the hearing and need not be excluded  from our analysis.  But we note that plaintiff's argument is unpersuasive whether or not the report is considered.

A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  
Abrahamson
, 153 Ill. 2d at 88.  The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal.  
Abrahamson
, 153 Ill. 2d at 88.  We will not substitute our judgment for that of the administrative agency.  
Abrahamson
, 153 Ill. 2d at 88.  

Plaintiff's argument here attacks the credibility of witness testimony against her and urges us to reweigh the evidence to reach a different result.  But it is not our function to reevaluate witness credibility or resolve conflicting evidence.  
Golab v. Department of Employment Security
, 281 Ill. App. 3d 108, 112, 666 N.E.2d 347 (1996).  We are charged only with determining whether the findings of fact are supported by the manifest weight of the evidence.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998).  We conclude that the finding of abuse is supported by this record.  We are aware that an abuse finding here removes plaintiff from the state registry of qualified CNAs and prevents her from working in a long-term care facility.  We consider the severity of the sanction imposed in determining whether an administrative decision is against the manifest weight of the evidence.  
Abrahamson
, 153 Ill. 2d at 99.  But we defer to the expertise and experience of the Department in determining what sanction is appropriate to protect the public interest.  
Abrahamson
, 153 Ill. 2d at 99.  

The decision of the Department is affirmed.

Affirmed.    

McBRIDE, P.J., and BURKE, J., concur.