# Illinois Official Reports

## Appellate Court

*Nwaokocha v. Illinois Department of Financial & Professional Regulation*,
2018 IL App (1st) 162614

| | |
|---|---|
| Appellate Court Caption | EMMANUEL K. NWAOKOCHA, Plaintiff-Appellee and Cross-Appellant, v. THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION and JAY STEWART, in His Official Capacity as Director of the Division of Professional Regulation of the Illinois Department of Financial and Professional Regulation, Defendants-Appellants and Cross-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-2614 |
| Filed | March 15, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-7453; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellants.<br><br>Alan Rhine, of Chicago, for appellee. |

Panel
JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1 In this case, the plaintiff, Emmanuel K. Nwaokocha, was found to have violated the Medical Practice Act of 1987 (Act) (225 ILCS 60/1 *et seq.* (West 2012)) based on his guilty plea in federal court, in which he admitted to knowingly and willfully soliciting and receiving a kickback for referring a patient to a home health care provider for services that would be paid for by Medicare. The Director of the Division of Professional Regulation (Director) of the Illinois Department of Financial and Professional Regulation (Department) concluded that, based on this violation, plaintiff's medical license should be suspended for a minimum period of three years. Plaintiff challenged the sanction in a complaint for administrative review in the circuit court, and the circuit court subsequently instructed the Department to enter a suspension without a minimum period. In this court, the Department contends that the Director did not abuse his discretion and that the Director's chosen sanction should have been imposed. Plaintiff cross-appeals, arguing that any suspension is "unduly harsh" and that the appropriate sanction would have been probation.

¶ 2 The record shows that in September 2013, a federal grand jury charged in a superseding indictment that plaintiff and 10 other defendants had engaged in a scheme to commit Medicare fraud over a five-year period. The indictment alleged that plaintiff and another physician referred patients to Rosner Home Healthcare (Rosner), a provider of home health care services, and falsely certified on forms that the patients were confined to their homes and required home health care services. Medicare reimbursed Rosner for the medically unnecessary services that it provided as a result of those referrals, and Rosner paid bribes and kickbacks to plaintiff and the other physicians in exchange for the referrals.

¶ 3 In April 2014, the federal government filed a superseding information against plaintiff, charging plaintiff with violating 42 U.S.C. § 1320a-7b(b)(1)(A) (2012), which provided that "[w]hoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind *** in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program *** shall be guilty of a felony." The information specifically alleged that in July 2012, plaintiff was paid a kickback of $600 by a representative of Rosner in exchange for referring a patient to it for home health care services that would be paid for by Medicare. The information further alleged that the $600 payment was subject to forfeiture.

¶ 4 Plaintiff entered into a plea agreement to "enter a voluntary plea of guilty to the superseding information, which charged [plaintiff] with knowingly and willfully soliciting and receiving remuneration from Rosner in return for referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole or in part under Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)."

Plaintiff agreed that he was pleading guilty "because he [wa]s in fact guilty of the charge contained in the superseding information." The plea agreement provided a factual basis, and plaintiff admitted "the following facts and that those facts establish his guilt beyond a reasonable doubt." Specifically, plaintiff admitted that on July 19, 2012, he met with Edgardo Hernal from Rosner, and during the meeting, plaintiff "received from Hernal a cash payment of $600, which [plaintiff] understood was payment for his referring a patient to Rosner." Plaintiff also admitted that he "knew that accepting the money was unlawful" and that "Rosner billed Medicare for the home health care services purportedly provided to the patient whom [plaintiff] referred." Plaintiff acknowledged that the charge to which he was pleading guilty carried a maximum sentence of five years imprisonment and "a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater." Plaintiff agreed that each party could "recommend whatever sentence it deem[ed] appropriate." Plaintiff further stated that he had "read [the plea] [a]greement and carefully reviewed each provision with his attorney" and that he "underst[ood] and voluntarily accept[ed] each and every term and condition of" the plea agreement.

¶ 5        A presentence investigation report (PSI) was prepared by a probation officer and submitted to the federal district court in advance of the sentencing hearing. The PSI indicated that in addition to the $600 kickback that he received in July 2012, plaintiff had also received a series of payments from representatives at Rosner for several years prior. The PSI also indicated that between 2008 and 2012, plaintiff had referred 72 patients to Rosner, for which Medicare paid Rosner approximately $1.2 million. Special agent Ed Leitelt of the office of the Inspector General of the United States Department of Health and Human Services reported that plaintiff was recorded accepting $600 kickbacks on nine separate occasions and estimated that plaintiff had received a total of $78,000 in kickbacks from Rosner.

¶ 6        The PSI further indicated that plaintiff had made a written statement, reporting that he "was told, and believed, the money he received from Rosner was for marketing purposes." He claimed that he did not know that the conduct was illegal, but admitted that he could have taken steps to discover that it was. Plaintiff stated that he "did not set out to break the law but knew in his heart something was not right about the situation." He told the probation officer that he did not solicit or ask for the bribes but accepted them "against [his] better judgment." Plaintiff further claimed that he donated $10,500 of funds received from Rosner to charity.

¶ 7        At sentencing before the federal court, the government requested a sentence of 30 months' imprisonment, arguing that plaintiff "took advantage of the trust that his patients placed in him by making decisions that were influenced by his receipt of undisclosed, illegal remuneration from Rosner." Plaintiff contended that he was trusting, naive, and "led down a primrose path" by other participants in the scheme. Plaintiff submitted a number of letters from patients and coworkers, attesting to his character, and requested a sentence of probation. Plaintiff asserted that even if the federal district court would "do nothing other than impose the conviction and the mandatory special assessment of $100, [plaintiff] would still lose a variety of rights that he holds incredibly dear, including *** his chosen profession," noting that he would "have disciplinary action taken against his medical license by the Illinois Department of Financial and Professional Regulation."

¶ 8        The federal district court adopted the PSI and sentenced plaintiff to four years of probation, 250 hours of community service, forfeiture of the $600 kickback, and a $5000 fine. The court indicated that it was sentencing plaintiff "below the advisory guideline range" but did not

- 3 -

explain its reasons for the departure. The court specifically stated that it was "recommend[ing] to the Department of Financial and Professional Regulation that [plaintiff] be permitted to keep his medical license," but it did not provide any reasons for that recommendation.

¶ 9 Thereafter, in June 2014, the Department filed an administrative complaint against plaintiff, seeking discipline with regards to his medical license, which began the proceedings that are the subject of the instant appeal. The complaint alleged that plaintiff's guilty plea established that he violated section 22(A)(3) of the Act, which allows the Department to impose discipline based on a "plea of guilty *** under the laws of any jurisdiction of the United States of any crime that is a felony." 225 ILCS 60/22(A)(3) (West 2012). The Department also alleged that plaintiff's guilty plea established a violation of section 22(A)(5) of the Act, allowing for discipline based on "[e]ngaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." *Id.* § 22(A)(5). The Department asked that plaintiff's medical license be "suspended, revoked, or otherwise disciplined." In plaintiff's answer to the complaint, he admitted his guilty plea but contended that his license should not be revoked or suspended and requested that he receive lesser discipline such as probation or a reprimand.

¶ 10 In November 2014, a Department Administrative Law Judge (ALJ) conducted a hearing on the Department's complaint. Plaintiff was the only witness to testify at the hearing.

¶ 11 Plaintiff testified that he was a doctor and had practiced for over 30 years. He acknowledged that he pleaded guilty to "accepting money for [a] patient referral," that he was in fact guilty of the offense, and that he read the plea agreement several times before signing it.

¶ 12 Plaintiff explained that he began taking money from Rosner in 2008 or 2009. He estimated that he received money approximately 10 times in 2009, between 1 and 5 times in 2010, less than 10 times in 2011, and he could not remember how many times in 2008 or 2012. He characterized the payments as infrequent, occurring about half the time that he made referrals to Rosner. Plaintiff stated that he had not solicited or asked for the payments and that he gave the money back on one occasion. Plaintiff testified that he would receive envelopes of cash, which sometimes included handwritten notes of thanks for referring patients to Rosner.

¶ 13 Plaintiff denied that he had received almost $80,000 in kickbacks, as was estimated by the federal government, claiming instead that the total was between $7000 and $10,000. He asserted that he did not spend any of the money for "personal use" but used it for various charitable pursuits. He did not declare the payments as income on his tax returns from 2008 through 2011, or on his initial 2012 return, because he was not keeping track of the money he received. After his arrest in July of 2012, plaintiff filed a supplemental disclosure to his 2012 return which declared $7000 in additional income.

¶ 14 At various points during his testimony, plaintiff provided different answers to questions regarding whether he believed that accepting the money was wrong at the time that he did it. Plaintiff first contended that he did not think that it was wrong to accept the money, but later stated that he knew "in [his] heart" that he was wrong and that "there was something not quite right there." Plaintiff asserted, however, that he did not believe that taking the money was criminal, and that he thought that it was "marketing" and "part of [Rosner's] business practices."

¶ 15 Plaintiff denied that he was receiving $500 per referral in 2008 and that he later asked for the referral amount to be increased to $700 before agreeing to settle for $600 per referral. Plaintiff testified that between March and July of 2012, Hernal came to see him on various

occasions. Plaintiff later learned that Hernal had been "audio taping" him, and plaintiff believed that Hernal visited "specifically to set [plaintiff] up." Plaintiff further claimed that he was unaware that patients needed to be homebound for the federal government to pay for home health care services and asserted that he never certified a patient as homebound if he did not believe it to be true.

¶ 16 When questioned about the high ethical standards that physicians are held to, plaintiff stated that he had "always taken the best care of [his] patients to the best of [his] ability [and] i[n] terms of *** taking the utmost care of [his] patients, [he was] second to none."

¶ 17 In January 2015, the ALJ issued his report and recommendation to the Department's medical disciplinary board. In that report the ALJ determined that plaintiff had violated section 22(A)(3) of the Act when he pleaded guilty to receiving the kickback from Rosner. The ALJ also concluded that plaintiff had also violated section 22(a)(5) because his conduct violated the ethical standards applicable to physicians. The ALJ rejected plaintiff's position that he did not know at the time that he accepted the kickback that it was unlawful. The ALJ stated:

> "[T]he ALJ disagrees with this assertion, noting that in the Plea Agreement, [plaintiff's] admission is stated in the present tense while his knowledge of the criminality of accepting the money is stated in the past tense. [Plaintiff's] Plea Agreement does not state that [plaintiff] 'admits' that he 'knows' that accepting the money was unlawful. Moreover, the ALJ notes that [plaintiff's] admission that he knew accepting the money was unlawful appears in the middle of a subparagraph otherwise and expressly referencing the events and conditions of July 19, 2012. [Plaintiff] testified that he read the Plea Agreement several times before he signed it. He also had counsel at the time he executed the Plea Agreement and said [plaintiff's] counsel also signed the Plea Agreement."

¶ 18 The ALJ noted that plaintiff's acceptance of $600 in July 2012 "was part of a long series of similar acceptances by [plaintiff] of payment from Rosner in return for his referring patients to Rosner." The ALJ further stated that plaintiff's

> "(i) acceptance of envelopes full of cash for years in an economy where cash distributions by *** businesses are unusual, and (ii) his failure to pay taxes on those cash payments until his arrest, both support the ALJ's conclusion that [plaintiff] knew the payments were illegal. The ALJ concluded from observing [plaintiff] and listening to his testimony that [plaintiff] received several written notes of thanks for a referral with the envelopes of cash, and that [plaintiff] knew that Hernal was paying him when he referred patients to Hernal. The ALJ is not persuaded by [plaintiff's] assertions to the contrary. The ALJ concludes that [plaintiff] was not being candid when he claimed at the formal hearing that he did not know at the time that the payments from Hernal were in return for referrals."

¶ 19 In deciding what sanction to impose on plaintiff's license, the ALJ noted that the aggravating factors included the seriousness of the offense, the impact of the offense on injured parties, the vulnerability of the injured parties, the motive for the offense, and the financial gain that resulted from the offense. In considering plaintiff's testimony regarding mitigation, the ALJ stated:

> "[T]he ALJ had the opportunity to listen to [plaintiff's] testimony and observe his demeanor and concluded that [plaintiff] was not being candid at times. The ALJ finds the testimony that [plaintiff] did not pay taxes on envelopes of cash because he was not

keeping track of the money to be lacking in credibility. Even if [plaintiff] were not interested in making money, he knew that he used it for patient medication and charities. [Plaintiff] was keeping track of the funds. This brings [plaintiff's] credibility into question about other things, like his statements that he returned the money to Hernal and his statements that he never certified a patient as homebound when he did not believe he or she was homebound."

¶ 20 The ALJ determined that plaintiff's lack of prior discipline was a factor in mitigation. However, he declined to find plaintiff's contrition for the offences as a factor in mitigation, noting that, although plaintiff claimed to be sorry for his actions, "the ALJ observed that [plaintiff] made remarks that reflected that he was not always sincerely regretful when he said he was sorry." The ALJ found plaintiff's cooperation with the federal government, his guilty plea, and his payment of $600 in restitution for the kickback, were factors in mitigation, but rejected plaintiff's contention that belatedly paying taxes on $7000 in kickbacks constituted a mitigating factor of voluntary remedial action.

¶ 21 The ALJ stated that it was giving little weight to letters that praised plaintiff's character that had been submitted to the federal district court prior to his sentencing, noting that the authors were not subject to cross-examination and that the letters were intended for a different proceeding. The ALJ also gave little weight to a document that purported to list charitable donations made by plaintiff, observing that the list was unsigned and undated.

¶ 22 The ALJ noted that the Department was seeking an indefinite suspension of plaintiff's license for a minimum period of four years to run concurrently with his criminal probation, and that plaintiff was requesting discipline of less than a suspension. The ALJ addressed the federal district court's recommendation that plaintiff be permitted to keep his license, but observed that the court gave no explanation for that recommendation and did not indicate that it had considered the factors required to be considered in aggravation and mitigation of discipline imposed by the Department.

¶ 23 The ALJ described plaintiff's testimony and demeanor throughout the proceedings, finding that plaintiff

"does not at this time appreciate the seriousness of engaging in Medicare fraud. At times, he would force strings of apologies into answers that did not require them. [Plaintiff] made remarks that reflected that he was not sincerely regretful, but annoyed at having to express regret in a Department setting.

* * *

The ALJ concluded from [plaintiff's] testimony and demeanor that he was not taking Medicare fraud seriously because he considered his patient care to be sufficient. It further appeared that [plaintiff] could not be bothered to recall *** details related to his acceptance of illegal remuneration."

¶ 24 The ALJ explained that it was recommending a suspension with a minimum period so that plaintiff could demonstrate that he was unlikely to engage in further fraud before being permitted to practice again. The ALJ agreed with the Department that a suspension should be linked to his criminal probation but noted that the minimum of four years sought by the Department would extend past the end of the probation period, since time had passed since the probation period began. Accordingly, the ALJ recommended that plaintiff's license be indefinitely suspended for a minimum of three years.

¶ 25    In February 2015, the Medical Disciplinary Board (Board) adopted the ALJ's findings of fact, conclusions of law, and recommendations. Plaintiff filed a "motion for reconsideration but not rehearing." Plaintiff acknowledged "the Department's authority to impose this sentence" as well as the "underlying facts" and that "grounds for discipline" existed. Plaintiff argued, however, that he was an "exceptional man and *** physician who made an unbelievably poor decision" that was inconsistent with his character. On March 27, 2015, the Director entered an order denying plaintiff's motion for reconsideration and imposing an indefinite suspension for a minimum of three years on plaintiff's medical license.

¶ 26    In May 2015, plaintiff filed a complaint for administrative review in the circuit court, seeking reversal of the Director's decision. Plaintiff submitted a memorandum of law on July 24, 2015, arguing that the agency complaint had charged "only one offense" regarding a single $600 kickback and that his due process rights were violated when the ALJ considered more than the single instance in imposing discipline. Plaintiff further alleged that the agency "failed to give sufficient weight" to factors in mitigation and that the agency should have "given deference" to the federal district court's recommendation that he be allowed to keep his license. Plaintiff alleged that the sanction imposed was "arbitrary and capricious and overly harsh in view of the mitigating circumstances." Finally, plaintiff alleged that the sanction was not "consistent with sanctions imposed in other cases." Plaintiff pointed to cases involving other physicians with convictions for receiving kickbacks, arguing that his sanction was too harsh in light of the sanctions that had been imposed on those physicians. Accordingly, plaintiff asked the court to reverse and remand the administrative decision for the imposition of a new sanction.

¶ 27    On July 29, 2015, plaintiff filed a motion requesting the court to take "judicial notice of the sanction imposed by the Department *** in the case of Dr. Patel," who plaintiff alleged had received a sanction of a suspension of his license with no minimum period in similar circumstances. Plaintiff attached the "consent order" that had been entered in Dr. Patel's proceedings before the Department.

¶ 28    On October 9, 2015, the Department responded to plaintiff's motion to take judicial notice, arguing that the court should not take judicial notice of a sanction imposed "on an unrelated party in an unrelated matter." The Department argued that the consent order was "outside of the administrative record" and it was "irrelevant" to the sanction imposed on plaintiff.

¶ 29    The Department also responded to plaintiff's memorandum of law. It contended that the Department's decision was not against the manifest weight of the evidence. It stated that plaintiff waived the issue of the Department relying on a pattern of conduct because he did not seek to limit his testimony, object, or otherwise raise the argument during the administrative proceedings. Alternatively, the Department argued that the additional related criminal behavior was properly considered in light of the evidence submitted at the hearing, and that the complaint had reasonably apprised plaintiff of the charges against him. The Department further argued that the sanction was not arbitrary, capricious, or overly harsh; that the sanction was related to the purpose of the Act; and that no deference was required to be given to the federal district court's recommendation.

¶ 30    On December 11, 2015, the circuit court entered an order holding the following:

"1) The court takes official notice of the decision by the Department of Financial and Professional Regulation in the Kamal Patel case.

- 7 -

2) The court finds that the Department could consider the testimony of [plaintiff] regarding uncharged violations when there was no objection to this testimony at the administrative hearing.

3) The court finds that the Department has the authority to not follow a recommendation regarding licensure of a judge who renders a sentence in a criminal case;

4) The court finds there must be a sense of uniformity in the imposition of sanctions on licenses;

5) The case is remanded for the issuance of an order of suspension without a minimum period in order for the sanction to be consistent with other sanctions imposed by the Department of Financial and Professional Regulation where individuals were convicted of Medicare fraud."

¶ 31 Upon remand, the Director issued an order reiterating that he

"concur[red] with and adopt[ed] the ALJ's findings regarding the aggravating factors in this matter, including but not limited to the following factors:

a. [Plaintiff] was not candid when he claimed at the formal hearing that he did not know at the time that the payments he received from Rosner's agents were in return for referrals, raising questions about the truthfulness of his testimony.

b. [Plaintiff]'s serious offenses injured his patients and all other people who are in or rely on the medical marketplace.

c. [Plaintiff] himself indicated that he received between $7,000 and $10,000 in remuneration from Rosner, for which he did not pay taxes until after he was arrested."

¶ 32 The Director also

"concur[red] with and adopt[ed] the ALJ's findings regarding the mitigating factors in this matter, including but not [limited] to:

a. [Plaintiff]'s lack of prior disciplinary action *** .

b. [Plaintiff]'s cooperation with the department and other investigative authorities.

c. [Plaintiff]'s compliance with the District Court's order requiring him to pay restitution."

¶ 33 The Director stated that the Department "did not agree with the Circuit Court's finding that the indefinite suspension for a minimum of three (3) years is inconsistent with other sanctions imposed by the Department where medical licensees were convicted of Medicare fraud." The Director cited *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007), for the proposition that " 'the fact that different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable.' " The Director distinguished three cases involving other physicians that plaintiff had relied on during the administrative hearing, concluding that none of those cases supported a conclusion that an indefinite suspension for a minimum of three years was inconsistent with other sanctions imposed by the Department.

¶ 34 The Director also concluded that the circuit court "should not have considered" the case of Dr. Patel, because the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) provides that no new evidence should be heard by the court during judicial review, and the order involving Dr. Patel was "outside of the administrative record."

¶ 35 The Director stated that, "[h]aving considered the aggravating and mitigating factors in this matter, I hereby deem that [plaintiff]'s license should be indefinitely suspended for a minimum period of three (3) years, in accordance with the recommendation made by the ALJ and adopted by the board. *** While I believe that an indefinite suspension for a minimum of three years is warranted in this case based upon the law and the evidence, I will enter a lesser sanction in accordance with the Circuit Court's Order, for the sole purpose of complying with the Circuit Court's Order without waiving any issue for review on appeal." Accordingly, the Director ordered that plaintiff's license be placed on indefinite suspension with no minimum period.

¶ 36 Thereafter, on April 6, 2016, plaintiff filed a "motion for a stay" pending appeal, requesting that he be allowed to "earn a living during the pendency of an appeal." Plaintiff pointed out that the Department had indicated that it planned to appeal, and he argued that allowing the suspension to remain in effect while the appeal was pending would effectively result in "a suspension for a minimum period of time, which would contradict the intent" of the circuit court's order. Plaintiff objected to certain aspects of the Director's order on remand, arguing that the Director had improperly failed to address the "case of Dr. Begum" and had "made findings of fact which were not included in the prior administrative decision." Plaintiff contended that the Department "violated the requirements of the Medical Practice Act" by entering new findings of fact after the case was remanded and by not allowing plaintiff an "opportunity to present argument" regarding those findings of fact. Accordingly, plaintiff sought a "stay of the enforcement of the final administrative decision of the Agency."

¶ 37 On April 19, 2016, the parties appeared in court to discuss plaintiff's motion to stay. When the court asked if the Department had filed a notice of appeal yet, plaintiff's counsel stated, "I don't believe they have filed the notice of appeal, but I think it has to come back to the court first. *** I think when you remand a case, *** this court retains jurisdiction where there is a remand to the administrative agency." Counsel for the Department then stated, "I believe that we need a final order from *** [Y]our Honor before it moves to this next step where we move forward properly." Counsel for plaintiff added that his motion for a stay "does raise an issue about whether the order that was entered *** was procedurally proper. Part of our motion raises the fact that when it was remanded, the director made new findings. However, under the Medical Practice Act, *** there's a requirement that before any disciplinary functions can be exercised by the Department they have to have a written report from the Medical Disciplinary Board. There was no such report from the Medical Disciplinary Board, so the order that was entered by the director on his own, we're asserting in our motion *** was improper." The court then stated, "so what I'm hearing is that there's a question of whether there was compliance with this court's remand; is that correct?" Plaintiff's counsel answered, "Correct, in conjunction with the Medical Practice Act." The court then stated that it "need[ed] a response" on that issue, and set the matter for hearing on May 23, 2016.

¶ 38 The Department filed a response to plaintiff's motion for a stay on May 12, 2016. In that response, the Department argued first, that plaintiff's motion was premature because the circuit court had not yet entered a final appealable order after reviewing the Department's order on remand. Alternatively, the Department argued that plaintiff had not met the requisite factors to warrant the issuance of a stay. Specifically, the Department contended that plaintiff had failed to show that there was a reasonable likelihood of success on the merits, that the stay was necessary to preserve the status quo, or that it would not be contrary to public policy.

¶ 39    The circuit court denied that motion in a written order on May 23, 2016, and further ordered the Department to supplement the circuit court's record with a copy of the March 1, 2016, order entered by the Director on remand. No transcript exists in the record for the proceedings that occurred on that date. On August 31, 2016, the circuit court entered an order finding "that the new decision of the administrative agency complie[d] with the court's directions on remand" and "dismissed" the case.

¶ 40    The Department filed a notice of appeal from that order on September 29, 2016, and plaintiff filed a notice of cross-appeal on October 7, 2016.

¶ 41    Before turning to the merits of the Department's appeal or plaintiff's cross-appeal, this court has an independent duty to consider our jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984); *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 349 (2009). This duty is present, even where a party has not contested the court's jurisdiction to review the matter. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009); *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 22. When jurisdiction is found lacking, the reviewing court must dismiss the appeal. *Tunca*, 2012 IL App (1st) 093384, ¶ 22; *Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1*, 26 Ill. App. 3d 806, 813 (1975) (the question of jurisdiction "is always open and we may of our own motion dismiss an action where want of jurisdiction appears").

¶ 42    The parties both initially agreed that this court has jurisdiction to consider this appeal because it was an appeal from a final order—specifically, the August 31, 2016, order of the circuit court—pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). The Department further contended that the circuit court's prior December 11, 2015, remand order was not final because the court remanded the matter to the Department to reconsider the discipline originally imposed, citing *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 129, 136 (2009).

¶ 43    Upon this court's examination of the record in this case, we determined that a potential question existed regarding whether the December 11, 2015, order, which remanded the matter to the Department for the imposition of a suspension with no minimum period, was the final order in this case, and whether the Department's notice of appeal, filed more than nine months later on September 29, 2016, was timely to confer jurisdiction on this court. See Ill. S. Ct. R. 303(a) (eff. Jan. 1, 2015) (to obtain appellate jurisdiction, the appellant must file a notice of appeal with the clerk of the circuit court within 30 days after entry of the final judgment appealed from, or, if a timely postjudgment motion against the judgment has been filed, the appellant must file a notice of appeal within 30 days from the entry of the order disposing of the last postjudgment motion); *Martin v. Cajda*, 238 Ill. App. 3d 721, 728 (1992). Although, as stated above, the parties initially agreed that jurisdiction existed based on the August 31, 2016, order, appellate jurisdiction may not be conferred by *laches*, consent, waiver, or estoppel (see *Jenner v. Wissore*, 164 Ill. App. 3d 259 (1988); *Johnson v. Coleman*, 47 Ill. App. 3d 671 (1977)), and the beliefs of the court or parties as to the finality of an order will not render a final order nonfinal (*Martin*, 238 Ill. App. 3d at 728 (citing *Altschuler v. Altschuler*, 399 Ill. 559 (1948))).

¶ 44    In light of the above, on December 21, 2017, this court instructed the parties to brief the issue of this court's jurisdiction, specifically, whether the December 11, 2015, remand order was final and appealable, and if so, whether the revestment doctrine applies so that the circuit court was subsequently revested with jurisdiction. In the Department's supplemental brief, it

contends that the circuit court's remand order was interlocutory, not final. The Department states that we should interpret the circuit court's remand order as allowing the Department discretion to impose any discipline, up to and including a suspension with no minimum period, but not requiring the imposition of a particular sanction. Because a circuit court may not dictate the specific discipline to be imposed on remand (*Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 67 (2000); *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 704 (1994)), the Department asks this court to read the circuit court's order as merely providing "the ceiling" for a possible sanction so as to not render the circuit court's order unlawful. In the alternative, the Department argues that the revestment doctrine applies and that the circuit court was revested with jurisdiction based on the subsequent proceedings in the circuit court.

¶ 45    In plaintiff's supplemental response brief, plaintiff has taken a position contrary to the one he has previously advanced. Plaintiff now contends that his prior position was incorrect and argues that the remand order was final and appealable. Plaintiff points out that where a case is remanded to enter a judgment at the direction of the reviewing court, or to conduct further proceedings on uncontroverted incidental matters, then the judgment is final and reviewable (see *Martin*, 238 Ill. App. 3d at 724-27), and asserts that, pursuant to the specific instructions of the remand order, the Director had no discretion to enter a sanction other than a suspension with no minimum. Accordingly, plaintiff contends that the remand order was final and appealable, and since no notice of appeal was filed within 30 days of the entry of the remand order, this court does not have jurisdiction to consider this appeal and it should be dismissed. Additionally, plaintiff argues that the revestment doctrine does not apply in this case.

¶ 46    After reviewing the supplemental briefs and the record filed in this case, this court has determined that we need not reach the issue of the finality of the remand order. Assuming without deciding that the remand order was final, the circuit court was revested with jurisdiction based on the proceedings following that order. For the following reasons, we conclude that the revestment doctrine applies, and accordingly, that this court possesses jurisdiction to consider this appeal and cross-appeal.

¶ 47    In general, a trial court generally loses jurisdiction to hear a cause at the end of the 30-day window following the entry of a final judgment. *People v. Bailey*, 2014 IL 115459, ¶ 8. The revestment doctrine, however, acts as an exception to that general rule. *Id.* Under the revestment doctrine, a circuit court may be "revested" with jurisdiction after the time for appealing from a final order has passed without an appeal, when three criteria are met. *Id.* ¶ 19; *People v. Kaeding*, 98 Ill. 2d 237, 241 (1983). For the revestment doctrine to apply, both parties must "(1) actively participate in the proceedings; (2) fail to object to the untimeliness of the late filing; and (3) assert positions that make the proceedings inconsistent with the merits of the prior judgment and support the setting aside of at least part of that judgment." (Emphasis omitted.) *Bailey*, 2014 IL 115459, ¶ 25; see also *Kaeding*, 98 Ill. 2d at 241.

¶ 48    Plaintiff argues that this is not a proper case to apply the revestment doctrine. Specifically, plaintiff contends that the Department did not actually "active[ly] oppos[e] the Remand Order by the Department" and that its actions were merely "in opposition to [plaintiff's] Motion for [a] Stay." We disagree.

¶ 49    In this case, we find that all three criteria were met so that, even if the remand order was final and appealable, the circuit court was subsequently revested with jurisdiction. After the remand order was issued, the parties continued to actively participate in the matter, disputing

what the ultimate discipline should be. Neither party objected to the circuit court's authority to review the Director's decision on remand, and both parties engaged in proceedings inconsistent with the remand order. Specifically, the Department continued to take the position that the Director's initial discipline of an indefinite suspension for a minimum of three years was appropriate, and plaintiff sought a stay of the Director's decision on remand, contending that the Director had acted improperly on remand and had "violated the requirements of the Medical Practice Act." Because both the Department and plaintiff challenged the remand order, arguing for "setting aside of at least part of that judgment," the third criterion—often the most difficult to satisfy—was met. See *Bailey*, 2014 IL 115459, ¶ 25; *Kaeding*, 98 Ill. 2d at 241.

¶ 50    Having so found, we reach the merits of the Department's appeal and plaintiff's cross-appeal. In this court, the Department contends that the Director did not abuse his discretion in imposing a sanction of indefinite suspension of plaintiff's license for a minimum of three years, and that the circuit court improperly usurped the Department's administrative authority. Accordingly, the Department requests that this court affirm the original administrative decision. Plaintiff cross-appeals, arguing that, in light of the "mitigating circumstances," a sanction involving any amount of suspension is "unduly harsh" and "the lesser sanction of probation" should have been imposed instead.

¶ 51    Final administrative decisions made by the Department pursuant to the Act are subject to judicial review under the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). 225 ILCS 60/41 (West 2014). The Administrative Review Law provides that this court may review "all questions of law and fact presented by the entire record," but may not consider new or additional evidence in making its determination. 735 ILCS 5/3-110 (West 2014). In reviewing a final administrative decision, we review the Director's decision and not the ALJ's or the circuit court's determination. *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 19. The standard of review depends on the question presented; this court reviews factual questions under the manifest weight of the evidence standard, questions of law *de novo*, and mixed questions of law and fact under the clearly erroneous standard. *Heabler v. Illinois Department of Financial & Professional Regulation*, 2013 IL App (1st) 111968, ¶ 17; *Kafin v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶ 31.

¶ 52    "It is for the Director, as the trier of fact, to evaluate all evidence, judge the credibility of witnesses, resolve any conflicts in the evidence, and draw reasonable inferences and conclusions from the facts." *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 561 (2004). "The Director may accept or reject as much or as little of a witness's testimony as he pleases." *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 658 (2009). It is not the function of this court to " 'reevaluate witness credibility or resolve conflicting evidence,' but rather to determine only 'whether the findings of fact are supported by the manifest weight of the evidence.' " *Id.* (quoting *Ulysse v. Lumpkin*, 335 Ill. App. 3d 886, 893 (2002)).

¶ 53    Where, as here, we are reviewing the propriety of a particular sanction imposed by the Director, the standard of review is whether the Director abused his discretion in the imposition of the sanction. *Kafin*, 2012 IL App (1st) 111875, ¶ 42; *Reddy v. Department of Professional Regulation*, 336 Ill. App. 3d 350, 354 (2002). The Director abuses his discretion when a

sanction is imposed that is (1) overly harsh, arbitrary or unreasonable in view of the mitigating circumstances, or (2) unrelated to the purpose of the statute. *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 763 (1999); *Kafin*, 2012 IL App (1st) 111875, ¶¶ 42-43. On review, "[w]e must defer to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest." *Reddy*, 336 Ill. App. 3d at 354. A hearing officer may consider sanctions imposed in similar cases, but each case must be considered on its merits. *Siddiqui*, 307 Ill. App. 3d at 764.

¶ 54    We first examine whether the punishment was overly harsh, arbitrary, or unreasonable in view of mitigating circumstances. *Kafin*, 2012 IL App (1st) 111875, ¶ 43. Plaintiff argues that the Department acted arbitrarily in imposing a sanction on him that was significantly more severe than sanctions that were imposed on other doctors in similar cases. Specifically, plaintiff points to consent orders entered in proceedings against Dr. Farzana Begum and Dr. Kamal Patel.

¶ 55    As an initial matter, the Department contends that the circuit court erred in taking judicial notice of the consent order entered in the case of Dr. Patel because plaintiff had not previously raised it during the proceedings before the Department. See 735 ILCS 5/3-110 (West 2014) ("No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court."); *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 69 (a court "may not consider new or additional evidence [that was not previously before the agency] in making its determination"). Although we question whether the circuit court appropriately took judicial notice of a consent order that plaintiff had not previously brought before the agency for its consideration, we determine that we need not reach this issue. Even assuming that the circuit court properly considered the consent order of Dr. Patel, we still could not conclude that the agency acted arbitrarily in imposing its chosen sanction on plaintiff.

¶ 56    Although "the hearing officer may consider sanctions imposed in similar cases *** each case must be considered on its merits [citation], and it is for the Department to determine the appropriate sanction in each case." *Siddiqui*, 307 Ill. App. 3d at 764; see also *Robbins v. Department of State Police Merit Board*, 2014 IL App (4th) 130041, ¶ 50 (declining to consider whether a discharge was unreasonable because the agency failed to consider unrelated cases in making its determination).

¶ 57    We find the cases involving other physicians on which plaintiff relies to be distinguishable from the case at bar and unsupportive of his claim that the Department acted arbitrarily. Although Drs. Begum and Patel were both sanctioned for similar criminal violations involving the acceptance of kickbacks, the procedural posture of their cases was significantly different from that of plaintiff since they were each sanctioned pursuant to negotiated consent orders. See *Cleveringa v. J.I. Case Co.*, 192 Ill. App. 3d 1081, 1085-86 (1989) ("A party who refuses to settle a case on agreed terms always risks that he will be exposed to enhanced liability by that refusal. This is the essence of settlement negotiations."); *Siddiqui*, 307 Ill. App. 3d at 764 (finding consent orders involving sanctions of physicians under the Act to be distinguishable from the plaintiff physician's case, where the plaintiff had not entered a consent order, and instead had proceeded to an administrative hearing).

¶ 58    Plaintiff argues, however, that imposing a harsher sanction on him than Drs. Begum and Patel "serves no other purpose than to penalize [plaintiff] for choosing to exercise his right to a

hearing before the Department." Plaintiff contends that this "violates [his] right to due process," citing a criminal case—*People v. Love*, 139 Ill. App. 3d 104, 118 (1985). Plaintiff however, provides no argument on this point, nor does he cite any authority which would support the application of criminal due process principles in an administrative context. Accordingly, we find that plaintiff has waived this constitutional issue, by failing to adequately raise it. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017) ("[p]oints not argued are waived"); *Biggs v. Cummins*, 5 Ill. 2d 512, 516 (1955) ("It is not enough merely to assert in a vague and general fashion that constitutional safeguards are violated.").

¶ 59    Additionally, the fact that Drs. Begum and Patel were sanctioned pursuant to consent orders provides another point of distinction. Since plaintiff's case proceeded to an administrative hearing, the ALJ was able to hear plaintiff's testimony and make particular observations about plaintiff's candor and demeanor, which would not have occurred in cases resolved by consent order prior to a hearing. Those observations—specifically, that plaintiff was not candid, that he was not sincerely regretful, and that he failed to appreciate the gravity of Medicare fraud—were properly considered by the Director in fashioning an appropriate sanction.

¶ 60    We also disagree with plaintiff's premise that the sanction imposed against Dr. Patel was less severe than the one imposed on plaintiff because Dr. Patel's sanction did not include a minimum period. In the consent order involving Dr. Patel, the Department and Dr. Patel agreed that he had been found guilty of multiple counts of soliciting and receiving kickbacks, and conspiracy to solicit and receive kickbacks, and that he had received a term of imprisonment of eight months, followed by a one-year term of supervised release. Dr. Patel and the Department also agreed, "in order to resolve this matter," that a sanction of an "indefinite[ ] suspen[sion]" of his license should be imposed. The consent order further provided that Dr. Patel would "not be eligible to file his Petition to Restore [his medical license] until such time as he [wa]s able to provide documented proof of completion of his criminal sentence in [his] Criminal Case."

¶ 61    Although the consent order used different language than that used by the Department in this case, the consent order regarding Dr. Patel effectively did impose a minimum term, since Dr. Patel was required to provide proof of the completion of his criminal sentence before he was able to return to practice. Similarly here, the Department sought to coincide the minimum suspension period with plaintiff's criminal sentence—namely, his term of probation.

¶ 62    Deferring to the Director's expertise and experience, as we must, our review of the record reveals that the sanction imposed was neither unreasonable nor arbitrary. In this case, the Director stated the recommended discipline was based on a variety of factors, including plaintiff's lack of candor, his insincerity in his professions of regret, and his failure to recognize the seriousness of his violation. Accordingly, the Director found that a sanction of a suspension, including a three-year minimum period, was appropriate, so that plaintiff could demonstrate that he was unlikely to engage in further fraud before he was allowed to practice again. Deferring to the findings by the Director, such sanction cannot be said to be unreasonable or arbitrary.

¶ 63    Finally, we consider whether the punishment was unrelated to the purpose of the statute. The purpose of the Act is to protect the public health and welfare from those not qualified to practice medicine. *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 121226, ¶ 27. The Department argues that by committing Medicare fraud, plaintiff acted dishonestly and inconsistent with the "high

standard of honesty and integrity imposed on the medical profession." *Cicmanec v. Department of Registration & Education*, 182 Ill. App. 3d 710, 718 (1989). Plaintiff, however, contends that the sanction imposed on him was "unrelated to the purpose of the Act" because accepting a kickback "does not establish that patients received improper medical care."

¶ 64     Plaintiff cites no authority which would support a contention that sanctioning a physician for the commission of Medicare fraud is unrelated to the purpose of the Act. Plaintiff effectively argues that the only kinds of offenses that can be found to be related to the purpose of the Act are those that are directly related to "improper medical care." We disagree. Where, as here, plaintiff pleaded guilty to a felony, and "[e]ngag[ed] in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public," we conclude that the sanction imposed by the Director was not unrelated to the purpose of the Act. See *Danigeles*, 2015 IL App (1st) 142622, ¶¶ 104-05 (where a dentist was found to have fraudulently billed two insurance companies and made false statements on insurance claim forms, her "repeated and brazen conduct put the public's welfare in jeopardy" and the Department's decision to revoke her dental license for a minimum of five years and impose a $125,000 fine was not unrelated to the purpose of the Illinois Dental Practice Act (225 ILCS 25/1 *et seq.* (West 2012))).

¶ 65     Finally, plaintiff contends that he was not given proper notice of the Department's allegations. Specifically, plaintiff asserts that the Department's complaint referred only to a single instance of accepting a kickback, but that the Department went beyond the allegations of the complaint by discussing a "long series of similar acceptances." Plaintiff argues that the Department should have been limited to eliciting testimony and evidence regarding only the single instance of accepting a kickback for which he pleaded guilty. Apparently recognizing that he failed to raise this argument at the administrative hearing, plaintiff contends that this issue is not waived, arguing that "subject matter jurisdiction cannot be waived and can be raised at any time and in any court."

¶ 66     It is well settled that a party on administrative review forfeits any argument not presented to the agency. See *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 52. Although subject matter jurisdiction is not an issue that may be waived (*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333 (2002)), plaintiff's complaints regarding lack of notice do not implicate the Department's subject matter jurisdiction.

¶ 67     As an initial matter, our supreme court has made clear that the "term 'jurisdiction' is not strictly applicable when referring to an administrative agency" and, instead, the term is used "as shorthand for describing the agency's authority to act." *Zahn v. North American Power & Gas*, *LLC*, 2016 IL 120526, ¶ 14 n.2. Nonetheless, even if the Department could possess "subject matter jurisdiction," such jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota*, 199 Ill. 2d at 334. As in this case, the Department is vested with the authority to decide the type of case that was presented here—namely, whether plaintiff violated the Act. See 225 ILCS 60/22 (West 2014).

¶ 68     Alternatively, plaintiff requests that we review the issue under the plain error doctrine. The plain error doctrine, which normally is applied in criminal cases, generally allows a reviewing court to reach an unpreserved error when (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against a criminal defendant or (2) the error was so fundamental and of such magnitude that it affected the fairness of the trial and challenged the

integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Courts have found the plain error doctrine may be applied in civil cases, but only in "exceedingly rare" circumstances. (Internal quotation marks omitted.) *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010) (quoting *Palanti v. Dillon Enterprises, Ltd.*, 303 Ill. App. 3d 58, 66 (1999)). Specifically, in order for the doctrine to apply in a civil case, the party proposing the use of the doctrine must show a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process itself. *Baumrucker v. Express Cab Dispatch, Inc.*, 2017 IL App (1st) 161278, ¶ 55; *Wilbourn*, 398 Ill. App. 3d at 856.

¶ 69        Plaintiff, however, makes no argument or showing of egregious prejudice, contending only that he established plain error under the less onerous criminal standard. After the Department pointed out the additional requirement for the doctrine's applicability in civil cases, plaintiff made no additional argument regarding plain error in his reply brief.

¶ 70        Nonetheless, we are not convinced that error, let alone plain error, occurred based on the introduction of evidence concerning kickbacks other than the single kickback that was the subject of plaintiff's guilty plea. See *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010) ("Without reversible error, there can be no plain error."). In this case, plaintiff did not contest that he had committed the violations charged in the Department's complaint. Rather, the administrative hearing focused on what the appropriate discipline should be for his admitted violations of the Act. Pursuant to section 2105-130 of the Department of Professional Regulation Law, once there has been a finding that a person has committed a violation, the Department may consider various aggravating and mitigating factors when determining the appropriate disciplinary sanction. The aggravating factors that may be considered include, but are not limited to:

> "(1) the seriousness of the offenses;
>
> (2) the presence of multiple offenses;
>
> (3) prior disciplinary history ***;
>
> (4) the impact of the offenses on any injured party;
>
> (5) the vulnerability of any injured party, including, but not limited to, consideration of the injured party's age, disability, or mental illness;
>
> (6) the motive for the offenses;
>
> (7) the lack of contrition for the offenses;
>
> (8) financial gain as a result of committing the offenses; and
>
> (9) the lack of cooperation with the Department or other investigative authorities."
>
> 20 ILCS 2105/2105-130(b) (West 2014).

¶ 71        In light of these stated factors, we would conclude that evidence regarding the series of kickbacks accepted by plaintiff—to which he freely admitted—provided context to his violation and was relevant to several factors listed above. Accordingly, we would be inclined to find no error in the Department's consideration of the additional kickbacks.

¶ 72        Nonetheless, even if we were to find error, we would not find this to be one of the exceedingly rare civil cases that warrant application of the plain error doctrine. *Wilbourn*, 398 Ill. App. 3d at 856. Any possible error was not so prejudicial as to substantially impair the integrity of the judicial process itself, and accordingly, defendant's notice claim is forfeited.

¶ 73    Based on the facts presented, it was not unreasonable for the Director to enter a sanction of a suspension for a minimum period of three years against plaintiff, and we therefore defer to the experience and expertise of the Department in fashioning the appropriate sanction. For the same reasons, we reject plaintiff's cross-appeal, which argues that the circuit court erred in affirming the imposition of an indefinite suspension and that a sanction of probation should have been imposed instead. Accordingly, we reverse the judgment of the circuit court of Cook County, which affirmed the Department's order imposing a sanction of suspension with no minimum period on remand, and we remand this matter for the imposition of a suspension with a three-year minimum period.

¶ 74    Reversed and remanded.